## VICTORY SPARKLER AND SPECIALTY COMPANY *vs.* CATHERINE R. FRANCKS.

*Appeal—Ruling on Demurrer—Prejudicial Error—Workmen's Compensation Act—Exclusiveness of Remedy—Accidental Injury—Disease—Phosphorus Poisoning.*

Prejudicial error on demurrer depends, as a rule, upon the then state of the pleadings, and not on what occurred later in the course of the trial.                                    p. 372

After a ruling against defendant on demurrer, it is necessary to go to trial, to take proof, and to have a verdict and judgment, in order to secure a review of the ruling on demurrer.
p. 372

On an appeal from a judgment for plaintiff, involving a re-
view of a ruling against defendant on a demurrer by the latter,
it cannot be contended by plaintiff that, because the record
omits the testimony and prayers, and the exceptions thereon, it
does not affirmatively appear that plaintiff did not recover on a
case entirely different from that set up in the declaration or
that, if the plaintiff did. so recover, defendant raised the ques-
tion of variance by a specific prayer, as required by Acts 1914,
ch. 110.                                           p. 372

In the absence of anything in the record to the contrary, the
Court of Appeals must assume that the trial below proceeded
in harmony with the pleadings, and that the proof admitted
conformed to them.                                 p. 372

Aside from the exceptions created by the Workmen's Com-
pensation Act itself, its operation is exclusive of all other rem-
edy and liability, with respect to both the employer and em-
ployee, engaged in hazardous employments, in regard to all
injury arising out of and in the course of employment.   p. 375

The legislative intent, in the passage of the Workmen's Com-
pensation Act, was to include within the act not only the newly
created class of compensable injuries, but also every injury
which could be suffered by any worker in the course of and aris-
ing out of the employment, for which there was then an exist-
ing right of action.                               p. 375

The sole remedy of an employee, who sustains an injury aris-
ing out of and in the course of her employment in an extra-
hazardous occupation, is under the terms of the Workmen's
Compensation Law, this situation being a statutory term of her
employment.                                        p. 376

An occupation or industry disease is one which arises from
causes incident to the profession or labor of the party's occupa-
tion or calling, and consequently a disease which is not a cus-
tomary or natural result of the profession or industry *per se,*
but is the consequence of some extrinsic condition or independ-
ent agency, is not an occupation or industry disease.   p. 379

Disease contracted by an employee in a manufactory of fire-
works, caused by phosphorus poisoning, resulting from the em-
ployer's negligence, was an injury in causal connection with her
employment, within the meaning of the Workmen's Compen-

sation Act defining injury as meaning "only accidental inju-
ries, arising out of and in the course of employment, and such
disease or infection as may naturally result therefrom." p. 380

The poisoning having occurred without the employee's design
or expectation, and it being by chance that the employer did
not use due care, that the noxious vapor was where it could
be inhaled by the employee, and that it was carried into the
latter's system, the injury was accidental.          pp. 379-381

The fundamentally accidental nature of an injury from phos-
phorus poisoning was not altered by the consideration that the
employee's infection was gradual throughout an indefinite pe-
riod, or that, instead of a single accidental injury, there was a
succession or series of accidental injuries culminating in the
same consequential results, nor was the accidental nature of the
introduction of the poison into her system lessened by the length
of time intervening between its reception and its first mani-
festation.                                              p. 380

A failure on the part of the injured employee to comply with
the directory provisions of sections 37, 38 of the act, by notify-
ing her employer within ten days after the first manifestation
of her injury, and to file her application within thirty days
after her disability, may be excused by the Industrial Accident
Commission in the exercise of its sound discretion.    p. 383

*Decided February 12th, 1925.*

Appeal from the Circuit Court for Caroline County
(ADKINS, C. J., WICKES and KEATING, JJ.).

Action by Catherine R. Francks, infant, by her father and
next friend, John L. Francks, against the Victory Sparkler
and Specialty Company. From a judgment for plaintiff,
defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON,
URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Vernon Cook* and *J. T. England,* with whom were *Tyler
& England* on the brief, for the appellant.

*William L. Rawls,* with whom were *Joshua Clayton, J. Owen Knotts, W. Brewster Deen, Wesley E. Thawley, Marbury, Gosnell & Williams,* and *Wm. Pepper Constable* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The appeal is from a judgment of $22,500, recovered against the appellant for the benefit of a young girl, who had contracted phosphorous poisoning while employed in the making of fireworks for the appellant. The company's pleas were to the effect (1) that it was an employer engaged in an extra-hazardous employment within the Maryland Workmen's Compensation Act, and had secured compensation to its employees by insurance in conformity with the act in an authorized assurance carrier; and (2) that the girl was its servant at the time she sustained the injury complained of which arose out of and in the course of this employment; and (3) that the employer had fully complied with all the provisions of the act, and was ready and able to pay her the compensation to which she was entitled thereunder; and (4) that this liability for compensation was exclusive. There was a replication to the pleas containing this defence, that denied that the injuries alleged in the declaration were accidental personal injuries, but asserted that they "were the result of the gradual contraction of a disease known as 'phosphorus poisoning,' caused by the inhalation of fumes and gases wrongfully and negligently permitted and allowed by the defendant to be collected in the place in which the said plaintiff worked for said defendant, as alleged in the plaintiff's declaration." The appellant demurred to this replication, which was overruled; and the case went to trial, and, after proof, a verdict was rendered against the appellant and judgment was extended in favor of the appellee. The case is brought up on the demurrer, and the rulings of the lower court on the evidence and prayers are not before us.

The demurrer presented the question involved in the approved manner; and we do not consider that the Act of 1914, chapter 110, has any effect on the right of the appellant to

have determined the correctness of the lower court's action on the demurrer. The affirmance or reversal of the judgment is on the question of law raised by the demurrer. Prejudicial error on demurrer depends, as a rule, upon the then state of the pleadings, and not on what occurred later in the course of the trial. After the ruling on the demurrer against the defendant it was necessary, as well as the established practice, to go to trial; to take proof and to have a verdict and judgment; and then the right of a review of the ruling on a demurrer cannot be denied. *Emersonian Apartments v. Taylor* (1918), 132 Md. 209; *Kendrick & Roberts v. Warren Bros.*, 110 Md. 76. The provisions of the Act of 1914,. chapter 110, apply to prayers, and require that if a prayer is to present a question of variance between the pleadings and the evidence, it must state specifically the points wherein it is claimed such variance exists. The act furnished no sufficient basis for the appellee's contention that, through the omission from the record of the testimony and of the prayers, and of the exceptions thereon, it does not affirmatively appear that the appellee did not recover the judgment on an entirely different case from that set up in the declaration; or that, if the appellee had so recovered, the appellant had raised the question of variance as pointed out by the Act of 1914, chapter 110. The important function of a demurrer is recognized in the Act of 1914, chapter 109, where it is provided that no question of the sufficiency of the pleadings as stating a cause of action as a defence, which might have been raised by demurrer, shall be raised by prayer or instruction at the trial.

The Court must assume that the trial below proceeded in harmony with the pleadings, and that the proof admitted conformed to them, in the absence of anything in the record to the contrary. Such an assumption is a practical necessity and is founded on an obviously sound principle of procedure. Furthermore, as the decisive question was determined on the pleadings, the incorporation of the proof and the prayers would have made an unjustifiable increase of the cost of the record.

The appellant was engaged in an extra-hazardous employment, and was not in default under any of the requirements of the Workmen's Compensation Act; and the girl was in his service when she gradually contracted, through her employer's negligence, phosphorus poisoning in the course of and arising out of her employment. The pleadings raised these two legal questions: Was the employer liable at common law to the servant, if her injury was not compensable under the terms of the Workmen's Compensation Act? and, Was not the disease of phosphorus poisoning an injury outside of the purview of the act? The lower court answered both these inquiries in the affirmative; and they are here renewed for a final determination.

1. The Act of 1914, chapter 800, has a preamble reciting that the then subsisting law with respect to injuries sustained by workmen in the course of their employment was inadequate, unsatisfactory, and uneconomic from the standpoint of the best interest of the workmen, the employer and the State, and these introductory recitals were followed by this sequent paragraph:

> "Now, therefore, the State of Maryland, exercising herein its police and sovereign power, declares that all phases of extra-hazardous employments be, and they are hereby withdrawn from private controversy, and sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents are hereby provided for, regardless of questions of fault, and to the exclusion of every other remedy, except as provided in this Act."

The quoted paragraph has the solemnity, sanctions and form of a statutory enactment, with the exception of a compliance with the provisions of the Constitution of the State providing that "The style of all laws of this State shall be, Be it enacted by the General Assembly of Maryland." Art. 3, sec. 29; *McPherson v. Leonard,* 29 Md. 377, 386-389; *Prince George's County v. B. & O. R. R. Co.,* 113 Md. 179, 182, 183; *Williams v. Broening,* 135 Md. 232. While it is not the Court's purpose to hold that this paragraph is a part

of the body of the statute, yet the Legislature could not have gone much further in stressing its intention to make the terms of the law exclusive within its indicated scope. Furthermore, .this preliminary declaration is, in substance, incorporated in the text of the act. *Northern Pac. R. R. Co. v. Meese,* 239 U. S. 614. See section 6604-1 of Washington Act, at p. 937 of U. S. Bulletin (1921), Workmen's Compensation Legislation.

In section 14 of the act, it is provided that "every employer subject to the provisions of this act shall pay or provide as required herein compensation according to the schedule of this act for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment, without regard to fault as a cause of such injury, except when the injury is occasioned by the wilful intention of the injured employee to bring about the injury or death of himself or of another, or where the injury results from the intoxication of the injured employee while on duty."

In respect to the liability imposed by the provisions last quoted, the same section declares: "The liability prescribed by the last preceding paragraph shall be exclusive, except that if an employer fail to secure the payment of compensation for his injured employees and their dependents as provided in this Act, an injured employee or his legal representative in case death results from the injury, may, at his option, elect to claim compensation under this Act, or to maintain an action in the courts for damages on account of such injury; and in such an action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow-servant or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee." See sections 57, 59.

And later on, when the act prescribes the compensation for the workman or his family or dependents, section 36 explicitly sets forth:

"Each employee (or in case of death his family or dependents) entitled to receive compensation under this article shall receive the same in accordance with the following schedule and except as in this article otherwise provided, such payment shall be in lieu of any and all rights of action whatsoever against any person whatsoever."

The use of the word "payment" for this sentence has no other significance than that it was demanded to make this provision of section 36 consistent with that one of section 14, providing for an election by the employee or his representatives of compensation under the act or of the common law action for damages, without the defence of the negligence of a fellow servant, the employee's assumption of risk, or his contributory negligence, if the employer had failed to secure the payment of the compensation by one of the three methods of insurance prescribed by section 15.

When these various sections are considered together, in connection with the preliminary paragraphs of the act, the meaning is so clear and unmistakable that it would be a denial of the legislative purpose to strike their plain terms from the statute by judicial construction. An exact parallel in facts with this case is not found in the reported decisions of this tribunal, but whenever this Court has spoken on any phase of this subject, it has uniformly said that, aside from the exceptions created by the act itself, the operation of the law is exclusive of all other remedy and liability, with respect to both the employer and employee, engaged in hazardous employments, in regard to all injury arising out of and in the course of the employment. *Jirout v. Gebelein,* 142 Md. 692, 697-699; *Solvuca v. Ryan & Reilly Co.,* 131 Md. 265, 269, 129 Md. 235, 238; *Hagerstown v. Schreiner,* 135 Md. 650, 653, 654; *Adleman v. Ocean Accident & Guarantee Co.,* 130 Md. 572, 574; *Northern Pac. R. R. Co. v. Meese,* 239 U. S. 614, 618; *Grant Smith-Porter Ship Co. v. Rohde,* 257 U. S. 469, 476, 477; *Raymond v. Railway Co.,* 243 U. S. 43, 45; *Peet v. Mills,* 76 Wash. 437; *Zajachuck v. Willard Storage Battery Co.,* 106 Ohio St. 538; *Industrial Commission v. Brown,* 92 Ohio St. 309.

The decisions in *B. & O. R. R. Co. v. Branson,* 128 Md.
678, and in the same case in 131 Md. 686, were both before
the passage of the Maryland act, and the reference to the
right of the injured party to proceed at common law, if he
were not within the scope of the Federal Employer's Lia-
bility Act, was made in connection with that act, which had
none of the provisions of the present State law on the point
now being determined.

The case at bar is not within any of the exceptions specified
by the act.   The appellant had fulfilled all its obligations
under the act, and it was engaged in an extra-hazardous occu-  •
pation.   The girl was its employee, who had sustained an
injury arising out of and in the course of this employment
and her sole remedy was under the terms of the Workmen's
Compensation Law.   She accepted this situation as a statu-
tory term of her employment when she became the servant
of the appellant.

It has been argued with ability and skill that the Work-
men's Compensation Act is restricted in its operation to that
distinct and separate class of injuries arising from accidents,
and that with respect to all other injuries from any other
cause the common law remedies exist in full vigor and
efficacy against the employer.   This theory of the statute is
at once confronted by the salient purpose of the act, to put
an end to private controversy and to litigation.   It splits
apart the field of negligence in hazardous employments, and
makes futile the law's pronouncement that it is the exclusive
remedy for every phase of extra-hazardous employment, ex-
cept as by its own terms specified.   The contention does not
meet the provisions of section 14, which first impose the
employers' obligation to pay compensation, and then affirm
that this liability of the employer "shall be exclusive," *i. e.,*
exclusive of all other liability as an employer, to his em-
ployee, save as by the act indicated.   In other words, the
statute has given to labor what it never had before, and has
taken from capital what it had always enjoyed, and has com-
pensated the latter by limiting its liability, while engaged in
hazardous employment, and conforming to the act, to the pay-

ment of compensation only to those who sustain an injury, arising out of and in the course of their employment, that is compensable under the act.

The statutory definition of injury, which was made compensable without reference to neglect of employer or fault of worker, except when the injury was self-inflicted or the sole result of the intoxication of the employee, and the abolition of the fellow-servant rule, of the defences of contributory negligence and assumption of risk, and the substitution of a regulated and certain compensation for damages, contribute convincingly to the conclusion that the legislative intent was to include within the act not only the newly created class of compensable injuries, but also every injury which could be suffered by any worker in the course and arising out of the employment, for which there was then a subsisting right of action. *Baggott Company v. Industrial Commission,* 290 Ill. 530. With this conception of the purpose and effect of the act, the Legislature was consistent in making the prescribed liability of the employer and remedy of the employee exclusive with respect to all injuries sustained in the hazardous employment.

It is true that the question here has never been decided by this Court, yet the former opinions were on cognate matters and the view stated, while not controlling, is at least suggestive; and in accord with the construction now given, which is within the letter and spirit of the enactment. The decisions of other appellate tribunals, which have not reached our conclusion, were controlled by the wording of their own respective statutes, which will be found to be substantially different from the Maryland act either in phrasing, or in additional or in omitted provisions in respect to or affecting the subject under discussion. If the decisions of these courts were adopted, the Maryland act would undergo an amendment by judicial construction through engrafting upon it the effect of the particular provisions of the foreign acts.

The statute becomes its own expositor when the subject of the enactment is known, and the object to be accomplished by it is understood, and the words employed are free from

uncertainty and doubt, and express clearly and distinctly
the sense of the Legislature. "The language of the statute is
its most natural expositor; and when its language is suscepti-
ble of a sensible interpretation, it is not to be controlled by
any extraneous considerations." *Alexander v. Worthington,*
5 Md. 485; *Sutherland on Statutory Construction,* sec. 237.

2.    Catherine R. Francks was an employee of the appel-
lant, a manufacturer of fire works, and she worked in its
"spit devil department" where, some time during the years
1921, 1922, 1923, or parts thereof, "she gradually contracted
a disease known as phosphorus poisoning" through the inhala-
tion of dangerous and noxious fumes and gases, wrongfully
and negligently permitted and allowed by the appellant to be
collected in the place where she worked, without warning or
notice to her, and which resulted in long periods of sickness,
a serious operation for the removal of parts of her lower jaw-
bones, the extraction of a number of her teeth and painful
medical treatment, with inability to work as she did before
the contraction of the disease. She entered the employment
of the appellant about June 1st, 1921. The pleadings do
not disclose when she left, but the suit was brought on Decem-
ber 7th, 1923, and the declaration was filed that day.

The gravamen of the action is negligence, and the appel-
lant is charged in the five counts of the declaration with
neglect in failing (a) to provide a safe working place; (b)
to supply proper appliances and equipment for the expulsion
of the gases from the workroom; (c) to secure competent fel-
low-servants for the operation of devices for expelling the
fumes and preventing their accumulation; (d) to warn and
instruct the employee of the danger of the employment and
adopt and make known proper regulations for the protection
of the worker.    The theory on which this suit was brought is
that the injury to the girl was not an accidental injury but an
occupation disease, and so not within the Workmen's Com-
pensation Act.    For the reasons given in this opinion there
could be no recovery at common law, as the employer in this
instance was exempt from all liability to its employee for
any accidental injury except under the act.    The remaining

inquiry is whether the injury sustained by the employee is within the terms of the act.

An occupation or industry disease is one which arises from causes incident to the profession or labor of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, *per se,* but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease. In this case, the occupation of the girl as an employee in a department of a manufactory of fireworks was simply a condition of her injury, whose cause was the definite negligence charged against the employer. The most that is warranted to be inferred from the allegations of fact in the declaration is that the phosphorus poisoning alleged was the gradual result of the negligence of the employer. As this negligence was a breach of duty to her, it was not to be foreseen or expected by the worker as something which would occur in the course of her employment. The fact that she continued at her place of labor, in the doing of her common and regular task, makes it clear that the phosphorous poisoning happened without her design or expectation, and so her injury was accidental. *Providence Life Ins. Co. v. Martin,* 32 Md. 310, 314, 315; *Century Dictionary,* Vol. 1, p. 34; *Gay v. Hocking Coal Co.,* 184 Iowa, 949; *Industrial Com. v. Roth,* 98 Ohio St. 34; *Dove v. Alpena Hide & Leather Co.,* 198 Mich. 132; *Re Maggelet,* 228 Mass. 57; *Hartford Accid. & Indem. Co. v. Industrial Accident Com.,* 32 Cal. App. 481; *Gladfelter v. American Phorphorus Co.* (1917), 26 Pa. Dist. R. 1072. It was by chance that employer did not use due care, and by chance that the vapor of phosphorus was where its noxious foreign particles could be inhaled by the girl. It was by chance that the inspired air carried these particles into her system, sickening her, and causing a necrosis of the jaw after fortuitously finding a lesion. The injury thus inflicted upon

her body was accidental by every test of the word, and its accidental nature is not lost by calling the consequential results a disease.    Nor can the fundamentally accidental nature of the injury be altered by the consideration that the infection was gradual throughout an indefinite period, as this simply implies a slow development of the malady, or that, instead of a single accidental injury, there was a succession or series of accidental injuries culminating in the same consequential results.    The introduction of phosphorus into the human body is none the less accidental, if through the medium of a pimple point, an unsound tooth, a scratch or a lesion, or of ingestion or in breathing.    Nor is the accidental nature of this introduction lessened by the length of time intervening between the reception of the poisonous substance and the first manifestation of the resultant poisoning, as its progress may be slow, moderate or rapid according to the form it assumes.    The infection is the accidental injury, and whatever follows in causal connection are but consequences, which measure the duration and effect of the injury.    As suggested by Lord Birkenhead in *Innes v. Kynoch* (1919), A. C. 765, 770, an ultimate analysis would resolve the facts into (1) the invasion of the bacillus or harmful foreign substance, which may be conceived as a blow or physical assault of far more disastrous consequences than the usual result of larger and more substantial forces; and (2) the infection or contraction of the disease which is the injury, the assault being deemed the accident.

The phosphorus poisoning of the employee as described in the declaration was therefore not a disease incident to the industry, but was an injury in causal connection with her employment, within the meaning of the act defining injury to "mean only accidental injuries, arising out of and in the course of employment, and such disease or infection as may naturally result therefrom."    Sec. 63, par. 6.

It would be impossible to reconcile the indifferent use throughout the act of such terms in reference to the same thing as "injury," "accident," "personal injury," "injury by accident," "notice to or knowledge of the *occurrence of the*

*injury* on the part of the employer"; "such notice may be in writing—and state in ordinary language the time, place, nature and cause of the injury" (sec. 38, par. 1) or "such report shall state the (a) time, cause and nature of the accident and injuries, and probable duration of the injuries resulting therefrom; (b) whether the accident arose out of or in the course of the injured person's employment" (sec. 38, par. 2); "between the occurrence of an injury"; and "injury was not occasioned." However, the conflict is immaterial, and may indeed exist, by reason of this statutory definition of what alone is compensable.

It will be observed that the statutory definition of a compensable injury under the Maryland act is not that it is an "accident," or that it is an injury "by accident" but that it must be "accidental injuries." The difference is important, as it marks the divergence between the thing or the event (*i. e.,* accident) and a quality or a condition (*i. e.,* accidental) of that thing or event. As the substantive carries the idea of something happening unexpectedly at a time and place, the term "accident" or "injury by accident" has been consistently construed by the courts to embrace two different notions: the first is that of unexpectedness, and the second, that of an injury sustained on some definite occasion, whose date can be fixed with reasonable certainty. The adjective "accidental" is not a technical term but a common one whose popular usage would not necessarily mean that the words "accidental injuries" indicated the existence of an accident, but rather the idea that the injury was either unintended or unexpected. See 25 *Harvard Law Review,* pp. 338, 342. In the term "accidental injuries," the substantive "injuries" expresses the notion of the thing or event, *i. e.,* the wrong or damage done to the person; while "accidental" qualifies and describes the noun by ascribing to "injuries" a quality or condition of happening or coming by chance or without design, taking place unexpectedly or unintentionally.

If this simple distinction between a noun and an adjective be drawn, a host of cases will cease to have any application to the instant inquiry. Counsel have ably argued the case at

bar and in their briefs, and we have weighed the many cases cited, but we do not find in those reaching a different conclusion from this opinion a sufficient analogy between their statutes and the Maryland act to make their decisions controlling. The Maryland act is remedial and should receive a liberal construction so as to give to it the most beneficial operation; and when it contains positive direction that it should "be so interpreted and construed as to effectuate its general purpose," the Court must act under the compulsion of this mandate, and not disappoint an explicit provision, plainly expressed, even if it should involve a change in its present administration. In jurisdictions where an "accident" was the test of compensability and disease was excluded, there has been a marked tendency towards a more liberal theory of compensation since the decision in *Brinton's Ltd. v. Turvey* (1905) A. C. 230. The first step was to recognize that disease may be injury by accident, subject to the proof of some particular event or occurrence happening on a particular date and place as being the accident. The next step was taken when it was held there was no distinction in principle between an accident "which has been proved to have happened at a particular hour on a particular day and an accident in reference to which the particular hour or day cannot be established, but which certainly is proved to have occurred within some narrow limitation of time." *Innes (or Grant) v. Kynoch* (1919), A. C. 765; *Burrell v. Salvage* (1911), 90 L. J. K. B. 1540. Whether the injury was the result of one or more accidents would seem in principle to be quite as immaterial as particularity in the time of the occurrence, and the whole question to be one of the sufficiency of evidence to establish the causal connection between an accident or a series of accidents and the injury. A further discussion of the cases would unduly lengthen the opinion, and as the reasons controlling the Court have been set forth it is not necessary.

The phosphorus poisoning of the girl was contracted in the course of and arising out of an hazardous employment, at a particular place and within a known and definite par-

ticular period of time, and in causal connection with the
negligence of the employer, whose neglect and its effect were
not foreseen or anticipated by her. She was accordingly
entitled to compensation under the act, as is admitted by the
appellant, as well as its willingness to pay her compensation.
There is no reason why she should not presently make her
application for compensation. Her failure to notify her em-
ployer within ten days after the first manifestation of her
injury, and to file her application within thirty days after her
disability, are infractions of directory provisions of sections
37 and 38 of the act; and the commission may well excuse
her in the exercise of its sound discretion. The Court will
reverse the judgment, without a new trial, but without preju-
dice to the girl.

*On motion for modification of judgment* :

Since the filing of the opinion in this case, the appellee
has brought to the attention of the Court, alleging it as a
fact, that at the time of her employment by the appellant,
Catherine R. Francks was an infant under the age of eighteen
years. The record as made up contained no testimony on
that point. It is now submitted to us for the first time in a
motion for a modification of the judgment of this Court upon
the theory that this fact, together with the nature of her
employment, withdrew her from the operation of the Work-
men's Compensation Act, and that there should be a remand
of the case, with leave to amend her declaration so as to avail
herself of any other different cause of action which she may
have.

The Court expresses no opinion on the soundness of the
theory, or of the right of the appellee to recover under any
other form of action, but the Court will remand the case as
requested so as to afford the appellee the same opportunity of
amendment as she would have had if the court below had
sustained the demurrer.

> *Judgment reversed, with costs to the appellant,*
> *and case remanded with leave to the ap-*
> *pellee to amend the declaration and have*
> *a new trial thereupon, if it be so elected.*