IN RE PERO.

PERO v. COLLIER-LATIMER, INC., ET AL.

(No. 1925; December 17, 1935; 52 Pac. (2d) 690)

For the appellant, the cause was submitted on the brief of *Ray E. Lee,* Attorney General; *Thos. F. Shea,* Deputy Attorney General, and *Wm. C. Snow,* Assistant Attorney General, all of Cheyenne.

For the claimant and respondent, the cause was submitted on the brief of *J. R. Sullivan,* of Laramie.

RINER, Justice.

This case arose under the Workmen's Compensation Law of Wyoming and the facts involved are not in dispute. They may be stated thus:

Claimant, Leonard J. Pero, some time in March or April, 1931, commenced work for Collier-Latimer, Inc., the employer, as an attendant on a rock crushing machine which was used to supply crushed rock for a highway construction job located some three miles east of Laramie, Wyoming. At that time, so his testimony is, he was in excellent health, about twenty-one or twenty-two years of age, and had shortly before been married.

Pero's duties as employee were to see to it that the rock was properly fed into the crusher through a chute, which was provided with a gate. He stood on a platform alongside of the machine, with a long rake which he used to push the rock into it. His place was close to the mouth of the crusher, consequently, and about two feet from it, in fact, most of the time. This location was a very dusty one as it was on the east

side of the machine and the prevailing winds appear to have come from the west. His clothing, face and hands were all the while coated with the dust which arose from the operation of the crusher. During the eight hours of his working shift he was constantly enveloped with this rock dust. He seems to have been afforded no protection whatsoever from the flying particles and no one appears to have told him that there was any danger entailed through inhaling them until long after he stopped working for Collier-Latimer, Inc.

Allowing for time off due to broken machinery he was engaged in the occupation described for a period of about six weeks. About a week before June 29, 1931, claimant commenced coughing and continued to do so until on that date, or shortly before, he began coughing up blood. He immediately consulted a physician, who diagnosed his condition generally as pneumonoconiosis and especially as chronic silicosis of both lungs and that it was caused by the "inhalation of sharp, cutting pieces of silica or rock dust, recently ground, and these sharp pieces in the lungs cut into the substance of the lungs and bury themselves in the walls or the lining of the air passages." This in time produced "an increased fibrosis in the lung tissue—that is, a more marked deposit of fibrous tissue in the lungs surrounding the bronchi and the larger air passages near the hilus of the lungs."

The workman was ordered by the doctor to stop work at once and to enter a hospital, where he underwent treatment from July 6th to 16th, inclusive, 1931. At the end of that time he was allowed to return to his home under the physician's care until October 20, 1931. About seven months after he left the hospital Pero obtained work, first as a teamster and thereafter in a grocery store. In the last mentioned employment he was obliged constantly to lift heavy crates. This work necessarily demanded increased expansion of the

lungs, with a consequent tearing of the tissues, as the attending physician testified. Pero was obliged to stop this work five or six times for two or three days at a time, and finally, on the physician's advice, gave it up entirely November 20, 1934. Since that date, until February 8, 1935, the date of the hearing presently to be mentioned, he was unemployed. He at that time had a wife and two minor children dependent upon him.

July 6, 1931, Pero filed his "Employee's Report of Accident" in the district court of Albany County. In that report he stated that the accident occurred on June 26, 1931, and was caused by his inhaling limestone dust "while engaged in feeding rock crusher." The nature of the injury was then indicated as "impairment of lungs" and that it had produced temporary total disability. July 23, 1931, the employer filed its report in the matter, wherein the statement was made that the accident was not due solely to the culpable negligence of the employee. The employer did not dispute the workman's claim for compensation.

By appropriate court order, under date of July 27, 1931, which appears never to have been questioned by any one, claimant was awarded monthly compensation under the state law during the period from June 26, 1931, and, as the order read, "until able to return to some gainful occupation." This order made the following findings of fact:

"That claimant was injured on the 26th day of June, 1931, at Laramie in Albany County, Wyoming, while in the employ of said employer: That claim has been made for compensation on account of such injury: That such injury was not caused by the culpable negligence of the said Employee and that said injury is described as follows: Infection in lungs, caused from inhaling limestone dust in rock-crusher, which injury has disabled claimant since June 26, 1931; That there were dependent upon said Employee at the time of the

accident his wife; That compensation should be awarded on account of such injuries."

Compensation was duly paid claimant from the State Industrial Accident Fund pursuant to this order until November 26, 1931.

There is found in the record a letter dated December 16, 1931, from another physician than the one who had attended Pero, addressed to the Wyoming Industrial Commission, which bears the file mark of the district court at Laramie, Wyoming, under date of December 19, 1931. In that communication it was stated that Pero had been examined by him on November 9th, and also on December 16th, 1931, and no abnormal lung condition was found.

Thereafter the matter appears to have rested, no further orders being made, no additional compensation paid and no additional steps taken in the case until November 23, 1934, when claimant filed in said court his petition reciting the history of the case and alleging that the petitioner was then "unable to work or follow a gainful occupation." It was prayed that the court set a day for the hearing, at which it might be determined "whether or not petitioner is entitled to temporary compensation or to permanent partial or total disability." No adversary pleading seems to have been filed as against this petition.

February 8, 1935, the hearing sought was held, after all parties interested, including the State Treasurer, had been previously duly notified. At that time the claimant appeared by his counsel, the employer was unrepresented and the Assistant Attorney General of Wyoming represented the Treasurer. The claimant and his attending physician both testified. No other testimony or evidence was submitted. The physician whose testimony has already been referred to stated that "without further training or the ability to make

his living in some other line I would say that he (Pero) is permanently totally disabled," and that before he could engage in any kind of occupation he would have to learn some trade "where he would have a sedentary life in dust-free surroundings."

March 9, 1935, the district court entered an order of award wherein it found, among other facts, that the claimant "was injured by inhaling limestone dust from a rock-crusher used by said Collier-Latimer, Inc., in crushing rock near which the claimant was working; that said injury to claimant was sustained in the course of his employment with said company, said injury resulting in silicosis of the lungs; that the said accident arising out of claimant's employment with the said Collier-Latimer, Inc., is an injury within the meaning of the statute providing for compensation for personal injury sustained by accident arising out of and in the course of employment; that as a result of said injury the claimant is now suffering from permanent partial disability to the extent of sixty-two and one-half percent of permanent total disability." Compensation was accordingly adjudged in claimant's favor on the disability basis thus found. This order of award the State Treasurer is now questioning, and the record in the matter has been brought here by the direct appeal method of appellate procedure.

It is contended for appellant that the district court had no jurisdiction to make the final order, whose findings are quoted above, because the application of the injured workman was not filed within the time fixed by law (Section 124-112 W. R. S. 1931), evidently referring to the "petition" hereinbefore mentioned, which was filed as heretofore noted November 23, 1934. But the first order of award of date July 27, 1931, specifically found as a fact, as we have seen, that Pero had made a claim for compensation on account of injury here involved, and pursuant thereto an award

was made for temporary total disability, to be operative until claimant was "able to return to some gainful occupation." It is apparent that the serious and destructive nature of the injury was not realized when the awarded compensation was no longer paid and claimant again endeavored to work. His continued efforts to keep on working demonstrated that to be so, and clearly, also, that he was not unqualifiedly able to return to employment. Neither that order, nor any other one made in the matter, until March 9, 1935, undertook to finally close the case upon a determination of the workman's true condition. Undoubtedly it was proper at the time the hearing was held to inquire into the matter, as the court did, to ascertain in the light of the history of the case and the additional medical evidence the true situation in which the injury had placed claimant and whether he could in fact return to some gainful employment.

Mindful that Section 124-140 Wyoming Revised Statutes, 1931, declared that, "Every award within the meaning of this chapter is a judicial determination of the rights of the employer, the employe and the industrial accident fund as to all matters involved," and that the appellant has never at any time questioned the order of July 27, 1931, either as to its findings of fact or its award, but on the contrary recognized its binding force by making a number of the payments it directed, we conclude that the point may not be raised now that there was no request for an award made in the case. As we see it the "petition" of claimant filed November 23, 1934, asking for a final determination of the matter, in no wise altered the fact established in the case by the court finding aforesaid that a claim for compensation had already been filed.

It is next urged that the injury to the claimant shown by this record is not one within the purview of the Workmen's Compensation Law of this state; that

an injury to be compensable under the law must be an accident and as such be referable to a definite event, time and place; that so-called occupational diseases are not compensable under statutes phrased as ours, and that the only disease for which compensation may be made is one caused as stated in sub-division "(m)" of Section 124-107 W. R. S., 1931, which reads:

"The words 'injury and personal injury' shall not include injury caused by the wilful act of a third person directed against an employe for reasons personal to such employe, or because of his employment; nor a disease, except, as it shall directly result from an injury incurred in the employment."

Specifically it seems to be insisted that the injury to claimant's lungs was not an accident but rather an occupational disease.

A number of decisions from other jurisdictions have been called to our attention by appellant and we have examined a great many others, but it would be impossible within the reasonable limits of an opinion to review them. They present much diversity of views, some of which may be accounted for by variance in fact or in statutory provision, some to a difference of general judicial attitude concerning such matters. We have confined our discussion to cases under statutes and facts resembling in some degree those now before us and where the views expressed are helpful or logically lead to what we think should be a proper determination of the matter here.

From a survey of the several sections of the Workmen's Compensation Law of this state we consider it fairly deducible that the injury for which compensation may be allowed is one arising through "accident." To mention some: Section 124-112 W. R. S., 1931, requires reports from the employer and the injured employee, or some one in his behalf, to be filed in the

office of the district court "whenever an accident occurs," and the word "accident" as descriptive of the injury to be thus reported occurs throughout that section. By Sections 124-116 and 117 W. R. S., 1931, the fund from which compensation for injuries under the law is payable is expressly designated as the "Industrial Accident Fund." Other phraseology may also be found in the law which leads to the same conclusion. Section 124-102 W. R. S., 1931, disallows compensation for "injuries due solely to the culpable negligence of the injured employes."

The first section of the English Workmen's Compensation Act, in its sub-section 1, provided that, "If in any employment to which this act applies, personal injury by accident arising out of or in the course of the employment is caused to a workman" his employer should be liable to pay compensation.

Under this statute, in Brintons, Ltd., v. Turvey, (1905) A. C. 230, a workman was employed at sorting wool in a factory, and the medical evidence in the case was that a bacillus passed from the wool to an eye of the workman, producing the highly dangerous disease anthrax, of which he shortly died. The trial judge found there was no abrasion about the eye, and the medical testimony was to the effect that without some abrasion infection was hardly possible. This was nevertheless held to be an accidental injury and compensable.

Where a workman was employed in handling artificial manure manufactured mainly from bone dust, and died from blood poisoning caused by an abrasion on his leg becoming infected through noxious bacilli, which were largely present in the bone dust and also present in the air and other substances in a lesser degree, in Innes or Grant v. Kynoch, (1919) A. C. 765, it was held that this also was a compensable accident,

though it did not appear when nor how the workman received the abrasion and it was impossible to say with certainty the time when the infection occurred. Lord Chancellor Birkenhead observed, "What the particular time was is immaterial, so long as it reasonably appears that it was in the course of the employment."

In Selvage v. Burrell & Sons, 13 B. W. C. C. 277 (1920), it appeared that a girl in the course of her work acquired cuts and scratches on her hand. These injuries occurred at short intervals over a considerable period of time. Though she commenced this work in November, 1917, it was not until March, 1918, that abnormal physical conditions arose. She then showed symptoms of blood poisoning from pus formed in gatherings caused by the cuts. She continued to work until April 27th, and during that intervening time sustained further cuts and scratches. Then the poison had so affected her system that she was obliged to stop work and became totally incapacitated from arthritis. It was conclusively established that the arthritis was due to the cumulative effect of the series of accidental injuries. Yet it was held that the fact that no particular scratch or cut in itself could be said to be the cause of her incapacity, did not prevent the girl from recovering compensation. The master of the Rolls said:

"The scratches took place from time to time, the scratches caused formation of pus from time to time, and the more frequent the scratches became, the more frequent the formation of pus became; the worse the condition of the patient became, until it culminated towards the end of April in the unfortunate condition which I have mentioned."

Considering the purport of the case of Innes or Grant v. Kynoch, supra, he further remarked:

"It does qualify the strictness of what has been said in a great many cases, that you must be able to put your finger upon the exact place and time where and

when the accident happened. I cannot see that the fact that the condition results from several accidents prevents it resulting from accident within the meaning of the statute. The statute does not lay down that there must be only one accident, and if the condition is occasioned by what were in truth and in fact a number of accidents arising out of and in the course of the employment, then I do not think it matters whether it is more than one, and I do not think it matters that they extend over a considerable time."

Lord Justice Warrington, who also sat in the case, after quoting the passage from Lord Birkenhead's judgment in Innes or Grant v. Kynoch, supra, excerpted above, remarked:

"Now, the particular time here may be the happening of each one of the cuts, and if it were necessary to fix the time as from which the period necessary for giving notice would result, it would not be impossible, I think, to say that that time would be the happening of the cut when the consequences were first observed to be serious."

In Cole v. London & Northeastern Railway Co., 21 B. W. C. C. 87 (1928), the workman, a plate-layer employed by the railway company, worked continuously from May 10, 1924, to August 2, 1924, in a long tunnel which was carrying full train service. On the last mentioned date he coughed up a lump of black stuff and consulted a physician, who on October 1, 1924, certified that he was suffering from anthracosis, a form of dust disease. No award of compensation was sought until three years later. The alleged injury was held not to be an accident. Williams v. Guest, Keen and Nettlefolds, Ltd., 18 B. W. C. C. 535 (1925), 1 K. B. 497, was followed, wherein it had been decided that a workman who had been employed for some eleven years as a coal miner and was found at the end of that period to be suffering from silicosis, due to breathing in dust particles from the silica contained

in the rock in which he drilled, had no compensable accidental injury, though it was contended in the Cole case that Cole's incapacity resulted from the cumulative effect of a series of minute accidents, the Selvage case, supra, being relied on.

It may be noted that Lord Justice Atkin commenting on the last mentioned decision in connection with those in Brintons, Ltd. v. Turvey, supra, and Innes or Grant v. Kynoch, supra, in the course of his judgment said in the Williams case:

"It would appear to me to be a little difficult to reconcile the decisions as to the invasion of the bacillus being accidental, and the contention that the invasion of a body by a foreign particle, or series of foreign particles, might not also be accidental. We know poisons take different forms. I suppose it would not be unscientific to describe the invasion of the body by bacillus as being a form of poisoning, and there can be no doubt that poisons can operate mechanically, or they can operate in other ways on the constitution. They may operate at once by chemical combination, or there may be, as I have said, mineral poisons which operate sometimes almost solely by mechanical causes, and it is not, to my mind, very easy to distinguish a case of a mineral poisoning from the case of poisoning by bacillus."

The court seems to have considered itself bound in that case by a prior decision rendered some twenty years before, dealing with the subject of lead poisoning as an occupational disease. Steel v. Cammell, Laird & Co., Ltd. (1905), 2 K. B. 232; 7 W. C. C. 9.

Yet in Breen v. Morgan Crucible Co., Ltd., 26 B. W. C. C. 368 (1933), it appeared that the workman, who was suffering from pneumonokoniosis with fibrosis, in the report stated to be a disease of the silicosis type, sought compensation. The employee claimed that on June 17, 1932, the machine at which he was working had broken down in some way, causing a cloud of dust,

which overcame him so that he collapsed. The evidence was that the disease took years to develop, but that what happened on the date specified had accelerated its development. The trial court, accepting the workman's evidence, held that there had been an accident and made an award. On appeal the employer relied on the Cole case, supra. The Master of the Rolls, Lord Hanworth, and the other judges held the appeal should be dismissed, the former saying: "This is purely a question of fact and there was ample material before the learned county court judge on which he could arrive at his conclusions, and it is not for this court to interfere with the decision."

It is evident from the foregoing cases that under the English Workmen's Compensation Law, which presents the same requirement as our act as to the necessity of the injury being one through accident, after very mature consideration, it seems quite well settled that in order to establish that an accident has occurred within the meaning of the law, it is unnecessary "to prove and give particulars of the precise day, time and place at which the accident happened." It is apparent also that there has been a gradual enlargement of the term "personal injury by accident" as construed by the English courts.

Both in England and in the several States of the Union, unless expressly indicated otherwise by statutory language, occupational diseases are generally not regarded as compensable accidental injuries. See decisions hereinbefore cited and extended list of cases in 71 C. J. 600-601. What is usually regarded by the courts as an occupational disease has been set forth with perhaps reasonable accuracy in Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 Atl. 635, 44 A. L. R. 363, the court there saying:

"An occupation or industry disease is one which arises from causes incident to the profession or labor

of the party's occupation or calling. It has its origin in the inherent nature or mode of work of the profession or industry, and it is the usual result or concomitant. If, therefore, a disease is not a customary or natural result of the profession or industry, per se, but is the consequence of some extrinsic condition or independent agency, the disease or injury cannot be imputed to the occupation or industry, and is in no accurate sense an occupation or industry disease."

In that case the Maryland Workmen's Compensation Law declared a "compensable injury" as meaning, " 'only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally result therefrom.' Laws 1916, chap. 597, § 63, subsec. 6." The facts there considered by the court were that an employee of a concern manufacturing fireworks some time during the years 1921, 1922 and 1923 gradually contracted a disease known as "phosphorus poisoning," through the inhalation of dangerous fumes and gases, claimed to have been wrongfully and negligently allowed by the employer to collect in the place where said employee worked, without warning or notice to her, with the result that she suffered severe illness and had to undergo a serious operation for the removal of parts of the lower jaw. Holding that these facts failed to show an occupational disease but did establish an injury within the terms of the statute quoted, the court reasoned in part as follows:

"The fact that she continued at her place of labor, in the doing of her common and regular task, makes it clear that the phosphorus poisoning happened without her design or expectation, and so her injury was accidental. Providence L. Ins. & Invest. Co. v. Martin, 32 Md. 310, 314, 315; 1 Century Dict. p. 34; Gay v. Hocking Coal Co., 184 Iowa 949, 169 N. W. 360; Industrial Commission v. Roth, 98 Ohio St. 34, 6 A. L. R. 1463, 120 N. E. 172, 17 N. C. C. A. 342; Dove v. Alpena Hide & Leather Co., 198 Mich. 132, 164 N. W.

253; Re Maggelet, 228 Mass. 57, L. R. A. 1918F, 864, 116 N. E. 972; Hartford Acci. & Indemnity Co. v. Industrial Acci. Commission, 32 Cal. App. 481, 163 Pac. 225; Glatfelter v. American Phosphorus Co., (1917) 26 Pa. Dist. R. 1072. It was by chance that employer did not use due care, and by chance that the vapor of phosphorus was where its noxious foreign particles could be inhaled by the girl. It was by chance that the inspired air carried these particles into her system, sickening her, and causing a necrosis of the jaw after fortuitously finding a lesion. The injury thus inflicted upon her body was 'accidental' by every test of the word, and its accidental nature is not lost by calling the consequential results a disease. Nor can the fundamentally accidental nature of the injury be altered by the consideration that the infection was gradual throughout an indefinite period, as this simply implies a slow development of the malady, or that, instead of a single accidental injury, there was a succession or series of accidental injuries culminating in the same consequential results."

The Workmen's Compensation Law in Idaho provided that: "If a workman receives personal injury by accident arising out of and in the course of any employment covered by this chapter his employer or the surety shall pay compensation," and also that such an injury does "not include a disease except as it shall result from the injury," and further that, "An 'injury' or 'personal injury' to be compensable must be the result of an accident."

Under this statutory language it was held by the United States Circuit Court of Appeals for the Ninth Circuit, in Sullivan Mining Co. v. Aschenbach, 33 Fed. (2d) 1, that a painter's total disability resulting in the course of about a week, from the inhalation of poisonous gases thrown off by carbon disulphide used as a paint thinner, was not an occupational disease, but an injury where "his disability resulted unexpectedly and suddenly from an unusual agency. Hazard

from its use was not a common incident of a painter's occupation, but was fortuitous."

Governed by the same law, in Ramsay v. Sullivan Mining Co., 51 Idaho 366, 6 Pac. (2d) 856, the facts were that a workman was employed to weld the bottom of lead tanks. Fumes and gases were given off from the melting lead due to the use of an oxyhydrogen torch and the operator was furnished no protection against them. He commenced work in the early part of November and about three weeks later manifested signs of nervousness, colic, etc., and on December 22 became gradually ill, suffering a paralysis of his left arm. The court remarked in the course of its decision, holding the injury a compensable one, that:

"The evidence shows that the oxides of lead being absorbed into the body of appellant brought about a result in a few weeks, which, according to the testimony of physicians called by appellant and respondent, would usually take a period of months or possibly years, and, as to time, it was not the customary or natural result that follows the absorption of lead oxides into the system. Therein lies the distinction between an occupational disease and in injury by accident."

See also Leach v. Grangeville Highway District, (Idaho), 41 Pac. (2d) 618.

In Beaver v. Morrison-Knudsen Co., (Idaho) 41 Pac. (2d) 605, 97 A. L. R. 1399, the facts were briefly that the employee some years before had suffered from tuberculosis, but that at the time he undertook the employment in question his trouble was quiescent and in an arrested or latent state. In 1928, appearing to be in good physical condition and able to carry on manual labor, he started to work for the Morrison-Knudsen Company as a laborer at a rock crusher three or four months in that year and in each of the years 1929 and 1930. When the crusher was operating thick

clouds of dust were produced where he was working, which dust penetrated his clothing, covered the exposed parts of his body and caused him and those working with him to cough more or less. This dust contained a large percentage of silica. For the employee this coughing became more frequent as he continued to work under these conditions. In February, 1931, he did repair work on the rock crusher, also a dusty job, and in that month his cough became worse and he started spitting up blood. Subsequently he became ill, suffered a hemorrhage, and upon consulting a physician, his case was diagnosed as "acute tuberculosis." No one was able to testify as to the day, the month or specific time when the real injury was received or the final serious draught of dust was inhaled. The evidence indicated no illness of any kind during his work had affected the employee, and neither he nor the foreman for the employer apprehended there was any danger in working in rock dust. Upon a claim for compensation being presented, the workman having ultimately died, it was denied by the Industrial Accident Board, and this decision was affirmed by the district court. Rejecting the contention that the injury received was not an accident, reversing the action of the lower tribunals and denying a petition for rehearing, in the course of the opinion this was said:

"Had he (the workman) worked only a few days, possibl ya few weeks or months, and quit, he might not have suffered; but he remained on the job until he had to quit of a fatal case of tuberculosis. He could not anticipate or foresee the result, neither could his employer. Now who can in truth and fairness say this was not a compensable 'accident'?

"If a workman drives his employer's automobile for a couple of years until he wears the tires down to the inner tubes and suddenly a tire 'blows out' and the car goes into the ditch and kills the workman, no one doubts but that an 'accident' has occurred, although

the rocks had been grinding on that tire for a couple of years. Now if silica dust grinds on a workman's lungs for many months, developing latent tuberculosis until his lungs give out (blow up) and he dies, is there any material difference in 'the time, place and circumstances' of the accidents? Is not the one as much an 'accident' as the other?

"We are not unmindful of the fact that the words 'injury' and 'accident' are not synonymous terms as used in the statute under consideration. The facts of this case require a recognition of the distinction in meaning of these two terms. In the circumstances confronting us here, it is not thought essential to a decision of the case that the court assert or attempt to decide just when and where the injury and result both merged into a consummated 'accident.' In re Larson, 48 Idaho, 136, 279 P. 1087, and cases cited. All accidents are preceded by a cause; in some cases that cause may have operated instantaneously, and in others it may have been operating for days, months, or years, and ultimately the 'accident' occurs, the 'blow out' (or 'blow up'), happens. A workman works on a given job for years where he regularly has to lift a considerable weight; in the course of time his heart grows weaker and eventually he lifts a similar load and his heart fails and he dies; and the experts tell us that he overstrained himself in lifting the load, and we say it was an accident arising out of his employment. In re Larson, supra. Or it may impair or rupture some other part of the body so that the final effort at labor accomplishes the breakdown, and still we say it was an 'accident.' Hanson v. Independent School District 11-J, 50 Idaho 81, 294 P. 513. How different are such cases in principle from the one under consideration here?"

The Workmen's Compensation Law in Oklahoma defined a compensable "injury" and "personal injury" to mean only accidental injuries arising out of and in the course of employment and such diseases and infections as may naturally result therefrom, making a casualty the foundation of a compensable claim and excluding occupational diseases as a basis therefor.

Under this law and where an injury to an employee engaged in a hazardous occupation resulted from exposure to and inhaling of cement dust during the period of about three weeks, injurious effects being manifested soon after he began working and growing progressively worse, culminating at the end of that time in total temporary disability, it was held in affirmance of an award by the State Industrial Commission in Tri-State Contractors, Inc. v. Althouse, 166 Okla. 296, 27 Pac. (2d) 1041, that this was sufficiently certain and definite in point of time to be an "accidental injury." The contention of the employer, as stated by the court, was:

"It is said by the petitioners, however, in order to support an award of the Industrial Commission, that the claimant should be able to point to some definite fortuitous event happening on a day certain in order that the injury sustained by him be classified as accidental in its nature."

To this the court replied in part:

"The question now before us in this case seems to be adversely settled to the contention of the petitioners in the case of Quality Milk Products et al. v. Linde et al., 159 Okl. 256, 15 P. (2d) 58, and in the more recent case of Johnson Oil Refining Company v. Guthrie et al. (Okl. Sup.) 27 P. (2) 814. In the last case an injury was declared to be accidental in character which resulted from inhaling gas fumes and coke dust over a period of time, ultimately resulting on a date that could be ascertained in a disability to a claimant. The rule therein announced is controlling in the case at bar, and the two cases are identical in principle. Upon the authority of the two cases last mentioned, we hold that the injury suffered by claimant was sufficiently definite in point of time to be accidental in character."

In the State of Oregon, where the Workmen's Compensation Law defined a compensable injury as—"A personal injury by accident arising out of and in the

course of his employment caused by violent or external means," in Dondeneau v. State Industrial Accident Commission, 119 Ore. 357, 249 Pac. 820, 50 A. L. R. 1129, it appeared that an employee, who had been engaged in fighting a forest fire, contracted an inflammation in his left eye, which developed into glaucoma. It was conceded that this condition was induced by irritation from heat, smoke and from exhaustion. The employment had lasted four days. Holding the claimant to have sustained injury by "accident" within the meaning of the quoted statute—a law certainly more strict in its terms than that of Wyoming—the court remarked:

"So, in the instant case, the fact that the respondent cannot mention any particular time during the four days he was so strenuously working to serve his employer and other persons' property, when the smoke entered the eye in such quantity and under such conditions as to permanently destroy the sight thereof, does not cause the means of the injury to be any less accidental. The smoke and poisonous gas were not admitted into his eye purposely. He did not anticipate that gas and smoke would enter his eye in such quantity as to permanently injure it. It was very unusual for it to have done so. The agreed statement of facts admits that the sight of the eye was lost as a result of the smoke and overheating of the respondent. To deny him compensation under such circumstances is to construe the Workmen's Compensation Act with extreme strictness, instead of liberally as it should be.

\* \* \* \* \* \* \*

"In the instant case the 'occasion' was the forest fire. The date was the four days in which respondent was at work. The date is reasonably certain. We are of the opinion that time in relation to an accident is relative. In the instant case, the respondent was engaged for four days almost continuously in combating the progress of the fire. He was on duty in this behalf for 36 hours without relief. All this time was occupied and may be properly referred to as one period. In this one period he suffered the injury. We think that this sat-

isfies the requirement that the occurrence to be accidental must refer to a definite period of time."

The Workmen's Compensation Act of North Carolina declared that: " 'Injury and personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident." Where a workman acquired pulmonary asbestosis as a result of his inhaling asbestos dust, one of the questions for decision was, "Is pulmonary asbestosis produced by the inhalation of asbestos dust by an employee during a period of five or six months an 'injury by accident arising out of and in the course of the employment,' within the purview of the North Carolina Workmen's Compensation Law?" Answering this question in the affirmative, in McNeely v. Carolina Asbestos Co., 206 N. C. 568, 174 S. E. 509, the court employed this language:

"It seems to be generally conceded that, if an employee should suddenly inhale a volume of air laden with poison or other destructive agencies, producing injury immediately or within a short period of time, such injury would be deemed to be accidental or 'injury by accident,' but it does not seem that the time element should be paramount or controlling. Cabe v. Parker-Graham-Sexton, Inc., 202 N. C. 176, 162 S. E. 223. If so, the courts are forced into the field of speculation in an effort to determine what is a reasonable time or what standard of time shall be adopted in determining the rights of the parties. Moreover, it would not seem that the unexpected, unforeseen, and, therefore, accidental inhalation of deleterious matter could be deprived of its accidental quality by the mere consideration of whether it took five days or five months to produce the same result.

"An examination of the Workmen's Compensation Act of North Carolina discloses many uses of the expression 'injured employee' without the qualifying words 'accident' or 'by accident.' So that, unless we

attempt to whittle down or enlarge words or undertake to put big threads through the eyes of little needles, it would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression 'injury by accident' in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman."

The Workmen's Compensation Act of the State of Louisiana contained the following provision:

"The word 'Accident,' as used in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury. The terms 'Injury' and 'Personal Injuries' shall include only injuries by violence to the physical structure of the body and such diseases or infections as naturally result therefrom. The said terms shall in no case be construed to include any other form of disease or derangement, howsoever caused or contracted."

June 29, 1935, under that law, the Court of Appeals of Louisiana decided the case of Harris v. Southern Carbon Co., Inc., 162 So. 430. That was a case where a telephone lineman claimed compensation because he lost his foot due to an infected horny growth caused by his constant climbing of telephone poles. As indicating the court's view of the injury involved, the question for decision under the law of the state and the judicial determination of that point, we take the following quotation:

"We are of the opinion from the testimony that it was caused by trauma and friction of a continuous and progressive nature over a long period of time, caused by plaintiff's daily use of spurs in climbing poles. After the horny growth began, each time he jabbed his spur into a pole he was accelerating his then diseased con-

dition, and, as testified to by the doctors for the defense, each time this was done it was a new trauma. The last time he ascended a pole, which was in April, 1934, was the last trauma to his diseased foot and accelerated the progress of the disease. No one could doubt, after reading the record, that the constant climbing of the poles, if it was not the direct cause of the horny growth, was the accelerating cause after the growth had begun and which has resulted in the loss of use of the foot at the present time; and defendant does not at this time seriously contend to the contrary.

"This being true, the main defense made is presented to us, viz., Is plaintiff's diseased foot due to an occupational disease or an accident within the intendment of the Workmen's Compensation Law?

\* \* \* \* \* \*

"There is no evidence in the record to show or to intimate that the disease from which plaintiff is suffering is a natural, usual, or ordinary result of the occupation of a lineman, or that from common experience it is known to be a usual and customary incident to such a calling. There is no proof that any other lineman ever suffered with a like disease, and a search by us has failed to disclose a case anywhere in which such a disease was held to be a natural, usual, and ordinary result of such an occupation. There can be no doubt in this case about plaintiff's condition being caused by the work he performed, in constantly climbing poles, but it was not the natural, usual, and ordinary result thereof. It is the unusual thing to occur to one occupied as a lineman; and, in our opinion, the injury plaintiff received arose out of an accident within the meaning of the Workmen's Compensation Law of this state.

"In the case of Connella v. Gulf Refining Company of Louisiana, 154 So. 406, the plaintiff, who was a painter, died of lead poisoning, and the First Circuit, Court of Appeal, held it not to be an occupational disease and allowed compensation—a much stronger case for the defendant than the one at bar."

See also Industrial Commission of Colorado v. Ule, (Colo.) 48 Pac. (2d) 803.

In the case at bar, it may not be overlooked that our Workmen's Compensation Law, as is true generally of other statutes of similar character in other jurisdictions, must be "interpreted with reasonable liberality to accomplish its benevolent purpose." McConnell v. Murphy Bros., 45 Wyo. 289, 18 Pac. (2d) 629 and cases cited.

It is evident from an examination of the foregoing authorities that cases of the sort now under consideration must to some extent each be determined in accordance with its own facts. Within the reasoning of these authorities, however, it is our view that the injury suffered by Pero should be regarded as a compensable accidental injury. Neither he nor his employer evidently regarded it dangerous to inhale the rock dust emanating from the crusher. No precautions were taken to protect this workman against such an injury as occurred. No one suggested to him, previous to its happening, the need for any protection. It was by chance that he was stationed for his work on the east side of the machine as it was then operating. It was by chance that the air current, during the period of his employment, came from the west and blew the dust clouds constantly upon him. There is no difficulty in determining the exact date when he began to spit up blood as a consequence of the continued inhalation and cutting of sharp rock particles in his lungs. The time when the true character of his injury was discernible is equally clear. There is not a scintilla of evidence in this case indicating that the injury suffered by the claimant was the customary and natural result of the work in which he was engaged. There is no evidence that it was the usual result to be expected in working as he did during the period he was employed. There is no proof that any other workman ever suffered as did Pero working under like conditions. We do not believe the record in this case would

justly support a holding that the injury in question should be regarded as an occupational disease. Whether the abnormal condition produced in claimant's lungs in consequence of his inhalation of particles of rock dust be regarded as a disease or as a mechanical hurt, growing progressively worse, on account of the sharp particles retained in the lungs—for disease and injury sometimes overlap as the courts have pointed out—in our opinion, without the design or expectation of anyone, it "directly" resulted "from an injury incurred in the employment" as contemplated by our state statute.

Entertaining these views we think the order of award of the district court of Albany County has not been successfully assailed and it should be affirmed.

*Affirmed.*

KIMBALL, Ch. J., and BLUME, J., concur.