## POPE v. SAFEWAY STORES, INC.

(No. 2121; May 29, 1939; 91 Pac. (2d) 58)

For the appellant there were briefs and oral argument by *Bard Ferrall* of Cheyenne, Wyoming.

For the respondent there was a brief by *Wm. O. Wilson* and *James O. Wilson* of Cheyenne, and oral argument by *Wm. O. Wilson*.

268

*Bard Ferrall,* for appellant in reply.

RINER, Chief Justice.

This case arises under the provisions of the Workmen's Compensation law of this State. The district court of Laramie County made its award of compensation in favor of, and on account of injuries sustained by, the respondent Pope, who may be hereinafter occasionally mentioned as the "claimant" or the "employee." The award was resisted by the appellant, Safeway Stores, Inc., a Nevada corporation, which may briefly be designated herein as the "employer" or the "defendant." The cause was brought here by the direct appeal method of procedure to obtain a review of the record and the award made thereon.

The facts material to be considered in deciding the controversial point in the case are not greatly in dispute and would appear to be these:

The defendant is a corporation organized under the laws of the State of Nevada, but operates a large number of retail stores in the States of Colorado, Nebraska, Kansas and Wyoming. Its corporate charter is very broad as to corporate powers granted it and authorizes it, among many other things, not only,

"To engage in, conduct and carry on a general retail mercantile business, dealing in groceries, meats, provisions, grain, fruits, vegetables, seeds, flour, and any and all other food products;

"To buy, sell and deal in, at wholesale and at retail, groceries, meats, provisions, grain, fruits, vegetables, seeds, flour, food products, goods, wares and merchandise and personal property of every nature and description";

but also,

"To buy, lease, hold, improve, sell and deal in, real estate, and the fixtures and personal property incidental thereto or connected therewith," * * * *

"To construct, erect, equip, repair and improve houses, buildings, roads, alleys, sewers and conduits; to make, enter into, perform and carry out, contracts for constructing, maintaining, furnishing, fitting up, equipping and improving buildings of every kind; to advance money to, and enter into contracts and agreements of all kinds with builders, property owners and others, and to engage in and carry on in all of its branches, the business of builder, contractor, and dealer in brick, lumber, hardware, and other building materials."

The defendant does not customarily build the store rooms and buildings it uses, but leases them, and then it arranges their interiors to suit its own purposes. The claimant prior to the accident in question now had worked for the defendant on three different occasions: in the City of Laramie, Wyoming, in July, 1937, for a week or ten days, installing fixtures in its store there; in Casper during the month of October, 1937, for about eight or ten days, installing fixtures in a store there;

prior to working on the fixtures in the City of Casper he had been employed on the store building itself under an independent contractor; and, finally, he was retained for service in connection with the installing of fixtures in a store at Cheyenne.

The defendant makes payments to the Workmen's Compensation fund administered by the State Treasurer, but these payments are by reason of its employment of butchers in its stores.

The defendant's Cheyenne District Manager stated on the witness stand that its business was that of selling food; that the Cheyenne District goes "west to Rawlins, north to Lander and Worland, east to Rapid City, S. D., and what we call the Panhandle of Nebraska"; that there are twenty-six stores in this territory operated by the defendant; that the Manager's duties include not only "supervising, buying, personnel and general merchandising," but also the supervision of the installation of fixtures, equipment and partitions such as appear in the defendant's store located at 17th and Pioneer Streets in the City of Cheyenne, where the accident involved in this case occurred; that this store is a "self-service store"; that in the installation of fixtures in a new store of this kind, "sometimes we contract the installation of fixtures outright. Generally we bring in a man from this point or that point that has had previous experience and use him as a foreman and he employs local labor under his supervision. Beforehand we have drawn a plan as to the fixtures we want and where we want them located."; that the foreman in charge of the installation work was one Behrens, called in in accordance with this general custom on the part of the defendant in handling its installation work, and he resides in the City of Denver, Colorado; that this man was paid by the defendant on an hourly basis, and he had worked for the defendant as foreman in this manner for six or seven years; that

Behrens selected the men who did the installation work and the defendant paid them; that claimant worked installing fixtures in the defendant's Laramie store; that in Casper he worked on a building contract.

It appears that claimant was one of the men thus hired by Behrens for performance of the installation work in the defendant's Cheyenne store, aforesaid; that this installation work usually required ten days or two weeks to complete it for each store; that the fixtures installed included wall shelving and merchandise display bins, technically designated as "islands," the purpose of these islands being "to display merchandise offered for sale" and "to enable customers to see the merchandise." They were not fastened to the floor but could be moved about conveniently as desired.

Behrens, the foreman, testified that he has installed fixtures in hundreds of the defendant's stores over a period of some seven years past; that he has worked at building fixtures and installing them for the defendant in Laramie, Riverton, Wheatland, Cheyenne and Torrington, Wyoming; that above the shelving in the Cheyenne store the men in his charge ran a lattice around the top of the shelving to hide the back storeroom, and this he has had done in all the stores he worked in in Wyoming; that in performing this work of installation he goes to the lumber yards and arranges for materials and hires the local carpenters for only the duration of the job; that claimant was thus hired; that the general policy of the defendant in installing a store is for a general supervisor to go in and employ local men for the temporary job of building portable fixtures and lattice work, and that the employment in the defendant's Cheyenne store was of this type.

The claimant himself testified that he was on January 7, 1938, working on a scaffold erected for the purpose of building a partition consisting of two by

fours and two by twos, with quarter inch panelling between and lattice work above, in the Cheyenne store building aforesaid; that he was injured on account of the plank upon which he was working on a scaffold slipping off its support and in consequence he fell to the floor and was injured.

The testimony of these witnesses as above recited seems not to be seriously controverted. The injury incurred by the claimant consisted of a fractured neck of his left femur and a crack in the acetabulum. The employee has a wife and three children dependent upon him. His disability, total in character, prevailed from January 7, 1938, to and including May 31, 1938, and the trial court awarded compensation accordingly. No question is involved here relative to the amount of the award.

It is the contention of the defendant that the claimant is not entitled to compensation because, upon the record presented, the claimant was not a "workman" within those provisions of subdivision (i) of Section 124-106-7, W. R. S., 1931, as amended by Section 2 of Chapter 128, Laws of Wyoming, 1937, which read:

" 'Workman' means any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business."

The defendant relies largely upon the decision of this court announced in Lamont v. Intermountain Realty Co., 48 Wyo. 56, 41 P. (2d) 497.

Before proceeding further in the expression of our views concerning this case, it is proper to recall that in common with other appellate courts of the nation, this court has repeatedly held that the Workmen's Compensation Law of this State should be liberally and reasonably construed to protect persons suffering casualties in industry and to avoid incongruous results.

See In re McConnell, 45 Wyo. 289, 18 P. (2d) 629; Koprowski v. Megeath Coal Co., 48 Wyo. 334, 46 P. (2d) 61; Pero v. Collier-Latimer, Inc., 49 Wyo. 131, 52 P. (2d) 690; Baldwin v. Scullion, 50 Wyo. 508, 62 P. (2d) 531; Fox Park Timber Co. v. Baker (Wyo.) 84 P. (2d) 736.

We should refer also to other principles of law announced by our decisions which are pertinent here. In Fox Park Timber Co. v. Baker, supra, it was indicated that because an employer fails to file reports concerning certain employees or to make payments into the compensation fund of the State on their account, does not prevent an award being made, if the injured workman is legally entitled thereto. In the Lamont case, supra, it was said:

"The term 'casual employment' has not been defined uniformly and has given some difficulties. In general it may be said to mean incidental, occasional and not regular employment."

In that case it was held that a workman employed by the hour to do a job of painting, no special directions being given other than where he was to commence the work in the building wherein the employer ran a hotel, was a casual employee and his employment was not for the purpose of the employer's trade or business. This court in that case further commented upon the record there submitted that:

"The truth is, that, in the case at bar, the business or trade of painting was that of the workman herein, as he himself testified, not that of the owner of the hotel, and while the evidence in this case is, perhaps, too meager to say so definitely, it would almost seem that he should be considered in the nature of an independent contractor."

Where one O., whose regular business was that of a plasterer and mason, who for the time was engaged in moving a house, and the employee K. was engaged

as helper in this work, the contention was presented that as this was a single transaction on O.'s part, requiring only a few days, the employment was casual and not for the purpose of the employer's trade or business. However, the decision was to the effect that while the employment may have been purely casual, yet the moving of the structure was the particular business in which the employer was then engaged and though the time was brief, still the workman should receive compensation. Karos v. Ocenas, 34 Wyo. 357, 243 P. 593. In that case it was said:

"The law defines a workman as 'any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business.' Sec. 4321, C. S. 1920. It is contended that the workman in this case falls within the exception. * * * *

"The language of the exception in the Wyoming law is much like that in the English act. The courts of that country have considered it inadvisable to attempt to give a general definition of 'casual' which would meet every case, or to lay down general rules for determining when the employment is 'for the purpose of the employer's trade or business,' and leave each case to depend upon its own facts. Stokes v. Wortham, (1919) 1 K. B. 499; Manton v. Cantwell, (1920) A. C. 781. We think that is a wise policy.

"In examining the exception as contained in our law, we notice, first, that the casual nature of the employment does not leave the workman outside the law unless it appears also that the employment was not for the purpose of the employer's trade or business. It may be conceded that the workman's employment in this case was purely casual. We have already said that the employer while moving the building was engaged in an occupation within the act, and it must follow that that occupation for the time was his 'trade or business' within the meaning of section 4321. The workman's employment, though casual, was for the purpose of that trade or business, and he does not fall within the exception. It is to be emphasized that in this case the

building was being moved by the employer for gain, as an independent undertaking, and not as an incident to some other business."

Among the employments classed by Section 124-104, W. R. S., 1931, as amended by Section 1, Laws of Wyoming, 1937, as extra-hazardous occupations is "buildings being constructed, repaired, moved or demolished." Section 124-106-7, W. R. S., 1931, as amended by Laws of Wyoming, 1937, Section 2, subdivision (f), states that:

" 'Building work' means any work in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances."

It would appear from an application of the rules announced in the foregoing decisions that in the case at bar, while the employment of Pope was casual, yet as indicated in both the Karos and Lamont cases, supra, in order to avoid the award made, it must also be found as a matter of law that the employment was not for the purpose of the employer's trade or business, and what the finding concerning this point really should be is actually the only vital question requiring solution at present.

As pointed out in both the cases last above cited, the English Workmen's Compensation Act, dealing with the particular question thus raised, is quite like the Wyoming law on the point. The decision of the House of Lords in Manton v. Cantwell, (1920) A. C. 781, cited in the Karos case, announces the doctrine there followed by this court, to quote Viscount Finlay, Page 791:

"The case must depend simply upon the facts of the evidence in the particular case with which we have to deal, and the only general principle which can be laid down is that if it appears that the work was in the course of the business, then the casual labourer em-

ployed to do such work for the man who is carrying on the business is within the benefit of the Act."

The decisions in the courts of this country dealing with exceptions from the operation of the Workmen's Compensation Law relative to the point here to be considered are far from harmonious. Many can perhaps be distinguished upon the score of varying phraseology. Others are quite irreconcilable. We shall be content to review briefly a few cases determined under statutes akin to ours and with facts more or less analogous.

In Manton v. Cantwell, supra, it appeared that a farmer, who lived in a small farm house on a farm, had employed a casual laborer to thatch the roof of the farm house. The man fell off this roof and sustained fatal injuries. The evidence disclosed that it was a common practice for farmers in the district to do their own thatching work. The holding of the court was that there was evidence upon which the trial judge could find that the deceased employee was engaged for the purposes of the farmer's trade or business. The decision of the Irish Court of Appeal was consequently reversed and that of the trial judge, making an award, upheld.

The Workmen's Compensation Act of the State of Connecticut provided (Gen. Stats. Sec. 5345) :

"When any principal employer procures any work to be done, wholly or in part for him, by a contractor, or through him by a subcontractor, and the work so procured to be done is a part or process in the trade or business of such principal employer, and is performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor."

In Fox v. Fafnir Bearing Co., 107 Conn. 189, 139 A.

778, 58 A. L. R. 861, there was evidence that the defendant employer was engaged in the business of manufacturing ball bearings; that its building was lighted by an artificial lighting system and that windows were necessary for the purpose of ventilation and to permit natural light also to enter the rooms of the structure. It was decided in this case that the washing by an independent contractor's employee of the windows of the factory building occupied by the company was a part of the work of keeping the factory in running order; that accordingly one injured while doing such washing was within the law quoted above, notwithstanding the Workmen's Compensation Act of the State also provided that the term "employee" should not be construed to include one whose employment was of a casual nature and who was employed otherwise than for the purpose of the employer's trade or business. The workman in that case did not intend to labor as a window washer regularly, his regular occupation being that of lineman, though he had not followed it for sometime before the accident. The case is reviewed simply as in contrast with the case of Hill v. Begg, 24 T. L. R. 711, 1 B. W. C. C. 320, cited in the Lamont case, and to illustrate the conflicting views on quite similar facts and also under statutes substantially alike. It may be noted here that the quotation in the Lamont case from Lord Low's opinion was taken from the Scottish case of Rennie v. Reid, (1908) S. C. 1051, 45 Scot. L. R. 814, 16 Scot. L. T. 222, 1 B. W. C. C. 324. The wisdom of the rule that the disposition of each case of this character should depend upon its own facts is quite manifest.

In Gibbons v. United Electric Rys. Co., 48 R. I. 353, 138 A. 175, it was held that a workman temporarily employed to shovel snow from the tracks of the traction company and who had frozen part of his feet while doing that work, was entitled to compensation not-

withstanding the Workmen's Compensation Act of the State (Art. 8, Sec. 1, Par. (b), Gen. Laws 1923, Sec. 1290) provided that the word "employee" should not include a person whose employment was of a casual nature and who was employed otherwise than for the employer's trade or business. The court said, in response to the contention that the claimant was not an employee of the company entitled to an award, that:

"The employment of the petitioner might well be regarded as casual, in that the period of its continuance was uncertain, and that the employment was occasional; but that circumstance is not sufficient to bar the petitioner from compensation under the act, unless the employment was also not for the purpose of the employer's business. The removal of snow from the respondent's tracks was work necessary to be performed, in order that the respondent might carry on its business of transportation."

In proceedings under the Pennsylvania Workmen's Compensation Act (Pa. St. 1920, Sec. 21916) the case of Sgattone v. Mulholland & Gotwals, 290 Pa. 341, 138 A. 855, arose, where the facts were that sewer contractors had loaned a workman skilled in the handling of explosives, to a real estate company engaged in preparing land for building purposes, and the workman was fatally hurt by a dynamite explosion, which took place while he was engaged in destroying a stump by the use of explosives upon a driveway laid out as a part of the real estate development. It was held that the workman was an employee of the real estate company and not of the sewer company. To the further contention on behalf of the real estate company that no award could properly be made, the court said:

"It is insisted that the Workmen's Compensation Act (Pa. St. 1920, § 21916 et seq.) has no application in this case, though the deceased be considered an employee of Mullholland & Gotwals, since the work in which Sgattone was engaged was 'casual, and not in

the regular course of the business of the employer.' In order that this exception may relieve from liability, the presence of both elements mentioned must be established. Hauger v. Walker Co., 277 Pa. 506, 121 A. 200; Tarr v. Hecla Coal & Coke Co., supra, (265 Pa. 519, 109 A. 224) ; Blake v. Wilson, 268 Pa. 469, 112 A. 126, 15 A. L. R. 726. When the employment is by chance, without fixed duration of time, it may be said to be casual, but, even if so, the master is responsible if the work was in the regular course of his business, by which is meant during the normal operations which constitute it. Callihan v. Montgomery, supra, (272 Pa. 56, 115 A. 889) ; Fiorot v. Braide, 279 Pa. 247, 123 A. 779; McCall v. Bell Telephone Co., 79 Pa. Super. Ct. 505. The realty firm was engaged in improving the land for building purposes, and, as a part of their business, so that lots could be sold and access had to buildings erected, it necessarily laid out a street. To make it passable, the ground must be cleared and the stumps of trees standing in the roadway taken out. This was part of the ordinary work essential to the development of the operation in which the employer was engaged. The removal of obstacles, so that the property could be made available, was necessary to the successful carrying out of the realty firm's business of selling and building. Sgattone was killed while doing this work, and the facts are not such as to justify the conclusion that the loss was an excepted, and, therefore, noncompensable, one. It follows from what has been said that Mulholland & Gotwals, Inc., must respond to the claim of the dependants, and that no recovery can be had against Di Sandro & Son."

The controlling facts in Hauger v. H. W. Walker Co., 277 Pa. 506, 121 A. 200, upon which was predicated the only legal question in the case, viz., whether the decedent was killed while in the regular course of the business of the defendant, were as stated in the opinion :

"The latter was a manufacturer of ice-cream and other dairy products, and had, as its factory foreman, one Marlin G. Miller, who, as appellants admit, 'was charged with the duty of keeping the plant in operation,' making 'such small repairs as he could by him-

self, or with the assistance of other men in the regular employ of the company, but when there was some major job of repairing to be done, he, as factory foreman, called in' decedent, who was an expert machinist, to assist in doing this character of work. While engaged in the performance of his duty under such an employment, decedent was killed in plaintiff's place of business."

Disposing of the point the court said:

"Section 104 of the Workmen's Compensation Act of 1915 (P. L. 736; Pa. St. 1920, § 21919) provides that—
" 'The term "employe" as used in this act is declared to be synonymous with servant, and includes all natural persons who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer,' etc.
"It will be noticed that the last clause of this section is in form conjunctive, and hence inapplicable, unless the employment is not only casual, as this was, but also 'not in the regular course of the business of the employer.' Defendant having made the repairing of its machinery a part of the 'regular course of (its) business,' decedent was its employe by the very terms of this section, and plaintiff has the same right as the widow of any other employe who was killed or injured during the 'regular course of the business.' "

A decision made by the Supreme Judicial Court of Massachusetts is helpful here, that of Shannon's Case, 274 Mass. 92, 174 N. E. 235. The question raised was whether the injured workman came within the exception clause of the Massachusetts Workmen's Compensation Act, as one whose employment was "not in the usual course of the trade, business, profession or occupation of his employer" (G. L. c. 152, Sec. 1 (4) ). There the facts were that the employer was engaged in carrying on the business of spinning cotton, and the insurance policy under the Workmen's Compensation Act, was to indemnify the employer against liability for damages to employees indicated therein, without

reference to new construction work. The injury to the employee was sustained during the course of work of this character, such work consisting of the installation of a humidifier, which was done in order to carry on the business of spinning cotton more effectively and was done at the usual place of business by its own employees, under the employer's immediate management. It was held that the person injured was an employee and the injury compensable. The court, in affirming the award, said:

"The claimant was not employed by an independent contractor; the employer maintained a mechanical department, and the construction of the new feed pipes was, as found by the single member and by the board, a necessary part of the business for which the corporation was chartered. The employer, by its own employees, prepared and maintained its plant, and by the same means undertook the work of installing the new humidifier. This could be found to be within its usual course of trade or business."

It will be noted that specific reference was made by the court to the business for which the employer, a corporation, was chartered.

In Colosimo v. Giacomo, 199 Minn. 600, 273 N. W. 632, there was evidence that claimant's injuries were sustained while assisting in repairing and decorating, at the instance of the husband, a building owned by the wife, wherein the husband was to conduct a beer parlor and in which both intended to live. It was held that this evidence sustained a judgment granting compensation to the claimant on the ground that the work was being done "in the usual course of business" of the husband, notwithstanding it was casual in nature (Mason's Minn. St. 1927, § 4268, as amended by Laws 1933, c. 134). In the course of the opinion directing an affirmance of the award, the court pointed out that:

"We have held that the repair of a business building was part of the usual course of a business. Gahr v.

Strout, 179 Minn. 395, 229 N. W. 340. And in Bosel v. Henderson Holding Company, 167 Minn. 72, 208 N. W. 421, we held that a corporation organized for the purpose of acquiring, holding, renting, and using certain buildings, and engaged in repairing a building to make it ready for a tenant, was acting in the usual course of its business, and that an employee injured while making such repairs was entitled to compensation. Certainly the repair and decorating of a building in which the employer intends to establish a business is just as much in the usual course of that business, and the reasons which led to the results reached in the cases cited, apply with equal force in the instant case. It follows that the work was being done in the usual course of the business of Frank Giacomo."

The case of J. P. O. Sandwich Shop v. Papadopoulos, (Ind. App.) 13 N. E. (2d) 869, presented the following state of facts, as detailed by the court:

"There is no material dispute in the evidence. It shows that appellant corporation was operating a restaurant in the city of Gary. Appellee was an experienced carpenter. Tom Demenagos, the president of appellant corporation, called appellee and told him he would like to have some booths built and installed in the restaurant, which booths were to be similar to booths which appellee had built and installed in the same restaurant for appellant about ten months before. Demenagos requested appellee to obtain from the Cabinet Millwork Company, of Gary, an estimate of the cost of the lumber necessary for said additional booths. Appellee obtained such estimate, submitted it to Demenagos, and Demenagos told appellee, 'Go start to work at $1.25 an hour." Appellee worked on said booths five days a week from December 7, 1935, to January 27, 1936. Demenagos paid him each Saturday at the rate of $1.25 per hour for the time reported by appellee. On January 27, 1936, appellee accidentally injured his hand while working on said booths. It is impairment resulting from that injury which is the basis of this proceeding.

"The parties did not agree upon a definite amount which appellee was to receive for said work or upon a limit of hours which appellee could put in on the job

at the agreed rate. No estimate of the amount of labor required for the job was asked by appellant or submitted by appellee. The job was completed by the Calument Millwork Company."

Affirming an award, the court remarked:

" 'Before an employment may be said to be not compensable on account of it being casual, two things must concur. The employment must be casual and not in the usual course of the trade, business, occupation, or profession of the employer.' Barker, Receiver, v. Eddy et al., 1933, 97 Ind. App. 94, 185 N. E. 878, 880. See additional authorities listed in said opinion.

"Demanagos testified that the booths which appellee was working on when he was injured were necessary in his business.

"We hold that said employment was in the usual course of appellant's business."

It is suggested for the appellant that the decision in this case is contrary to that of this court in the Lamont case. We hardly think that is so. There seems to have been no evidence in the Lamont record that painting was necessary to the running of a hotel business, as the construction of booths for a restaurant concededly was for the latter.

In Continental Casualty Co. v. Haynie, 51 Ga. App. 650, 181 S. E. 126, it was decided that a carpenter injured while engaged in the alteration of the offices of a corporation doing a dairy business was entitled to compensation for such injuries as an employee of the corporation and was "employed in usual course of business of employer, or incidentally thereto," although the workman was not to be retained after the completion of the job and notwithstanding the corporation employed a man to superintend the work of alteration, authorizing him to employ needed help, and that the carpenter was employed by such foreman and worked under his direct supervision and control. It was said by the court in the course of the syllabus opinion filed:

"Under section 2(b) of the Compensation Act (Code of 1933, § 114-101), an 'employee' includes 'every person in the service of another under any contract of hire * * * written or implied, except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer.' Under section 15 (Code of 1933, § 114-107), the exclusion from the act applies only to 'employees * * * not in the usual course of trade, business, occupation or profession of the employer or not incidental thereto.' Ga. L. 1920, pp. 167, 177; Ga. L. 1925, pp. 282, 283.

"Therefore a carpenter who is engaged with others to aid in the alteration, repair, and enlargement of the offices of a corporation doing a dairy business, which offices are essential to the successful carrying on of such trade or business in an efficient and modern manner, and who will not be retained after the completion of such carpenter work, comes within the Workmen's Compensation Act as an 'employee' in the service of the dairy corporation, whose employment is 'in the usual course of the trade, business, * * * of the employer' or 'incidental thereto.' " (Citing authorities.)

\* \* \* \*

"The fact that the corporation employed one King to superintend the work of repairing and altering its offices, giving to him the right to employ such help as he needed to complete this work, and that King employed claimant, a carpenter, and others, for this purpose, claimant performing his work under the direct supervision and control of King, does not exclude the claimant under the facts of this case.

"The manager of the Foremost Dairy testified:

" 'Q. Your arrangement was that Mr. King was to be your foreman? A. Yes sir.

" 'Q. He was to hire your men? A. Yes sir.

" 'Q. And pay them, the men? A. Yes sir.

" 'Q. You were to furnish the money and buy the material? A. Yes, sir.' "

This decision was subsequently affirmed by the Supreme Court of Georgia in Continental Casualty Co. v. Haynie, 182 Ga. 608, 186 S. E. 683, that court declaring:

"We are of the opinion that the Court of Appeals correctly construed and applied sections 2(b) and 15 of the Workmen's Compensation Act."

This case in its facts seems to resemble quite closely those before us in the case at bar. It may be significantly noted that in this case the award made to the workman by the entire board of the Department of Industrial Relations was undisturbed though the case was carried to the superior court and through two appellate courts.

Recalling that each case of this kind in its disposition should depend in large measure upon its own facts, we do not think the matter at bar should be ruled by the decision in the Lamont case, supra. Here, while the employment of Pope was temporary and for a short time only, that cannot be regarded as a decisive factor, as pointed out in the Karos case, supra. The claimant in the instant case was engaged in work of a character that was regularly pursued every time a new store of the defendant was started. Hundreds of these stores were put in operation by it. Its places of business could not function at all unless fixtures were installed. These fixtures were required by the defendant to be of a certain type, regularly used by it, especially in a "self-service" store, such as the Cheyenne store was. Their installation was planned by the employer to be of such a nature as to display the merchandise offered for sale to the best advantage. Its charter, especially, authorized it to do the very work it was engaged in when claimant was injured in the course of preparation of its Cheyenne store for occupancy, and, undoubtedly, the work was being done for its profit. None of these facts appear in the Lamont case, and there, also, the painter was, as we have seen, almost to be regarded as an independent contractor, for it was his business alone that came within the extra-hazardous class listed by the statute, not the hotel business. In

the instant case, the employer's business, as shown by its charter and its actual work in installing these fixtures, belonged in the extra-hazardous statutory list of employments. The fact that the defendant saw fit to handle its store business through separate territorial district departments cannot, as we see it, affect the real relations of the parties as established by law.

We cannot say that as a matter of law the district court, upon the record before us, was in error in finding that the claimant's employment was for the purpose of the employer's trade or business. The judgment of the district court of Laramie County is accordingly affirmed.

*Affirmed.*

KIMBALL, J., and ILSLEY, D. J., concur.