JO ANN KEAHEY *v.* BILLY AVON DUNAGAN

[No. 1108, September Term, 1977.]

*Decided May 12, 1978.*

394

The cause was argued before THOMPSON, LISS and WILNER, JJ.

*John Noble,* with whom were *Vivian V. Simpson, Dennis M. McHugh* and *Simpson & Simpson* on the brief, for appellant.

*James T. Wharton,* with whom were *McCarthy & Wharton* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

In the early morning hours of June 3, 1975, a car driven by Billy Avon Dunagan (appellee), in which Jo Ann Keahey (appellant) was a passenger, collided with a tree in Chevy Chase, Maryland, causing substantial injuries to Ms. Keahey. Claiming that she was, at the time of the accident, in the employ of Mr. Dunagan or his company, Ms. Keahey filed a claim under the California Workmen's Compensation Act, and ultimately collected $30,000 under a compromise agreement approved by that State's Workers' Compensation Appeals Board. She also sued Mr. Dunagan in tort in the Circuit Court for Montgomery County. That court granted summary judgment against her, however, on the theory that, (1) if the accident arose out of and in the course of her employment for Mr. Dunagan or his company, workmen's compensation benefits constituted an exclusive remedy, (2) by filing for, receiving, and accepting such benefits under the California Act, she is estopped from relitigating the issue of her employment status, and (3) by entering into the compromise agreement and accepting the benefits under it, she has released her employer. Ms. Keahey appeals from the action of the Circuit Court, but, because we believe that the court was correct, we affirm.

We need not recite all of the claims, counter-claims, and amended claims with respect to Ms. Keahey's employment status. Suffice it to say that, beginning January 1, 1975, and for some period of time thereafter (that being the issue in dispute) she was employed by Coast Merchandising Company which, at the time, was a sole proprietorship owned by Mr. Dunagan.[1] The company was located in California and was insured, in accordance with the California Workmen's Compensation laws, by Republic Indemnity Company. On April 19, 1975, Dunagan and Keahey set out on a three- to four-month business trip around the country. The purpose of the trip was to solicit potential investors in a venture known as the "Santa Claus Letter Program" and to sell Santa Claus masks; and it was in the course of that trip, on the leg from Lancaster, Pennsylvania to Washington, D.C., that the accident occurred.

On September 5, 1975, Ms. Keahey filed her claim for benefits under the California Workmen's Compensation law. In her claim application, she alleged, among other things, that "the injured employee ... while employed under contract of employment made in California as a Secretary and Sales Representative on June 3, 1975 at Chevy Chase, Maryland, by the employer sustained injury arising out of and in the course of employment ... ". She listed her "employer" as Coast Merchandising Company. Republic Indemnity Company, Coast's insurer, filed an answer to the claim in which it denied Keahey's allegations as to "Injury", "Liability for self procured treatment", "Liability for future medical treatment", "Medical-legal costs", "Earnings", "Periods of disability", and "Permanent disability". Significantly, however, although a simple "x" would have sufficed to accomplish the result, it did *not* deny Keahey's allegations of "Employment", "Occupation", or "Insurance coverage".

While the California proceeding was pending, Keahey, on May 13, 1976, filed this action against Dunagan in Montgomery County. The Declaration makes no specific mention of Keahey's employment status at the time of the

---

1. This enterprise was incorporated as Coast Merchandising Corp. under the laws of California on September 12, 1975.

accident.[2] Dunagan's plea to this Declaration was filed on July 16, 1976, part of which was a "special plea" claiming that Keahey's claim "is barred by the exclusiveness of the Workmen's Compensation remedy."

On August 3, 1976, aware of the Maryland proceeding, Keahey's California counsel filed a Trial Brief with the California Workers' Compensation Appeals Board, in which he stated, in relevant part:

> "JO ANN KEAHEY, applicant, was injured on June 3, 1975 as a result of an automobile accident which took place in the State of Maryland. The automobile in which she was a passenger was driven by Billy Dunagan, who lost control and struck a stationary object.... On the date of the accident both Mr. Dunagan and applicant were employees of Coast Merchandising Company, a California corporation.... The applicant and Mr. Dunagan were traveling from Lancaster, Pennsylvania to Washington, D.C. *for the purpose of keeping a business appointment. The accident took place during the course of an extended business trip.*" (Emphasis supplied.)

Later in this Trial Memorandum, with particular reference to the issue of whether the accident arose in the course of Keahey's employment, counsel asserted that "[t]he journey from Lancaster, Pennsylvania to Washington, D.C. was contemplated when the sales trip was commenced. The applicant was engaged in a business trip as a commercial traveler and thus should not be denied compensation." Pointing out the existence of the action in Maryland, counsel urged:

> "No personal injury award is certain until judgment. At this point applicant's right to recovery in Maryland is not litigated. Her statutory right to

---

2. The only reference in the Declaration to her employment was the claim that, as a result of the injuries sustained, Keahey "has lost, and may in the future lose, time from her employment, thereby suffering a great loss of income."

Workers' Compensation benefits is established. Defendants should argue exclusivity in the Maryland court, not before the Workers' Compensation Appeals Board in California. . . . No election has been made by applicant. The complaint in Maryland was filed to protect her rights under that State's laws."

That same day, August 3, 1976, Keahey appeared before the Workers' Compensation Appeals Board, the result of which apparently was a settlement of the matter. The official minutes of the hearing show as the disposition, "Fifteen days to the parties to file Compromise and Release." Indeed, on August 11, the parties entered into a formal Compromise and Release.[3] That agreement states that, "for the purpose of compromise only", the parties submitted certain "agreed statements of fact", among which were:

(1) That Keahey "claims that [s]he was employed on the 3rd day of June, 1975 at Chevy Chase, Maryland as a secretary & sales representative by Coast Merchandising Co. . . . and that [s]he sustained an injury arising out of and in the course of her employment";

(2) That "[t]he employee's present disability is in dispute. . .";

(3) That "[t]he parties hereby agree to settle any and all claims on account of said injury by the payment of the sum of $30,000. . .".

In the paragraph of the agreement captioned "Reason for Compromise", the parties stated:

"Defendants deny the applicant sustained injuries arising out of and occurring in the course of employment. A serious issue exists in that regard involving complex legal and factual disputes.

---

3. The California Workmen's Compensation law permits the interested parties to compromise any liability claimed to exist under the Act by means of a written release or compromise agreement filed with and approved by the Workers' Compensation Appeals Board. *See* California Labor Code, §§ 5000-5003. *Compare* an analogous provision in Md. Annot. Code, art. 101, § 52.

> Further, other substantial issues exist as to the nature, extent and duration of disability and liability for past and future medical expenses. Applicant has a third party matter pending in connection with the accident in Maryland. All parties desire to settle the matter at this time for one lump sum and to avoid the hazards and delays of litigation."

Finally, paragraph 11 of the agreement provides:

> "Upon approval of this Compromise Agreement by the Workers' Compensation Appeals Board or a Referee, and payment in accordance with the provisions hereof, said employee releases and forever discharges said employer and insurance carrier from all claims and causes of action, whether now known or ascertained, or which may hereafter arise or develop as a result of said injury. . . ."

On August 24, 1976, the Compromise Agreement was approved by the Board, and thereafter the $30,000 was paid out in accordance with the agreement.

Appellant makes two contentions in her appeal. First, she claims that the court erred in ruling, as a matter of law, that she was estopped from maintaining a tort action after entering into the compromise agreement. Second, she argues that the court erred in ruling, as a matter of law, that by accepting the workmen's compensation benefits she released Dunagan from tort liability.

Upon close examination, her first contention embodies two propositions. She first states the issue to be whether the application for and acceptance of benefits under the agreement precludes the maintenance of a tort action against the party identified as the employer in the workmen's compensation proceeding. She moves from that, however, to contend that, because she has asserted under oath in this case that she was not an employee of Coastal on June 3, 1975, there exists a genuine dispute of material fact — her employment status — and, for that reason, summary judgment was inappropriate. We need deal only with the first of these

sub-propositions; if, as a matter of law, her acceptance of the agreement and the benefits under it precludes her from maintaining this action, it would make no difference whether she raised, or purported to raise, an issue as to her employment status.

We start with the general proposition that, both in Maryland and California, where recovery of workmen's compensation benefits is available, that remedy is normally an exclusive one, and a tort action against an employer who is in compliance with the requirements of the workmen's compensation laws is not permitted.[4] Thus, if appellant had applied for and received benefits under the Maryland workmen's compensation law, this action would clearly have been barred; and, if she had received the scheduled benefits under the California law, she would not have been permitted to maintain this action in the California courts.

The narrow questions, then, are (1) will the application for and receipt of benefits under the California Act bar a suit in Maryland, and (2) does the acceptance of benefits under the compromise agreement have the same effect as would the acceptance of scheduled benefits awarded by the Workers' Compensation Appeals Board.

Article 101, § 21 (c) (4) provides that an employee and his employer who are not residents of Maryland, and whose contract of employment is entered into in another State, are exempt from the provisions of Article 101 while the employee is temporarily within Maryland doing work for the

---

4. Md. Annot. Code art. 101, § 15, requires every employer subject to the provisions of the article to pay or provide for compensation, according to schedules set forth in the article, for the disability or death of his employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of his employment without regard to fault. It further provides, with an exception not relevant here, that this liability "shall be exclusive." *See* Wood v. Aetna Cas. & Surety Co., 260 Md. 651 (1971), interpreting Victory Sparkler Co. v. Francks, 147 Md. 368 (1925); *also* Baltimore Transit Co. v. State, 183 Md. 674 (1944). The same exclusivity of workmen's compensation benefits is expressed in the California law. *See* California Labor Code, § 3601: "Where the conditions of compensation exists, the right to recover such compensation . . . [with an exception not relevant here] is the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment. . . ." *Also* Shook v. Jacuzzi, 59 Cal. App. 3d 978 (1976); Pacific Gas & Electric Co. v. Morse, 6 Cal. App. 3d 707 (1970); Solari v. Atlas-Universal Service, Inc., 215 Cal. App. 2d 587 (1963).

non-resident employer if (1) the employer has furnished workmen's compensation insurance coverage under the laws of its State so as to cover the employee's employment while in Maryland, and (2) provisions similar to this are included in the workmen's compensation laws of that other State (*i.e.,* there is reciprocity). In such event, § 21 (c) (4) provides:

> "The benefits under the workmen's compensation act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this State."

Both conditions set forth in § 21 (c) (4) are met in this case. That Coastal furnished workmen's compensation coverage for Keahey is evident from the proceedings in California, in particular the failure of the insurer to deny coverage in its answer to Ms. Keahey's claim and the compromise agreement itself. Statutory reciprocity of the type required by the Maryland statute is found in California Labor Code, § 3600.5 (b), a provision nearly identical to the Maryland one. It is therefore clear that Maryland must, and therefore does, recognize the exclusivity of the California workmen's compensation remedy where, as here, that remedy was in fact available and utilized by the injured employee. Accordingly, the first of the questions must be answered in the affirmative.

With respect to the second question, appellant asserts that the agreement did not foreclose this action because her employment status was never truly litigated or resolved. The intent of the parties, she says, was to leave open the Maryland tort case and settle only the California Compensation case; and she points to *Bugg v. Fairview Farms, Inc.,* 189 N.W.2d 291 (Mich., 1971), *Johnson v. Dave's Auto Center, Inc.,* 476 P. 2d 190 (Or., 1970), and *Rich v. Dyna Technology, Inc.,* 204 N.W.2d 867 (Iowa, 1973), as authority for the proposition that this case may proceed. Those cases, however, are distinguishable.

Each of these cases involved a situation where a claimant had entered into a settlement or compromise agreement in a

workmen's compensation proceeding and was nevertheless allowed to pursue a pending or subsequent action at law; but that is where the similarity ends. In *Bugg,* the Michigan court made clear that its decision rested on a finding that the Agreement specifically reserved the issue of employment status at the time of the accident for determination in the wrongful death action. All right of subrogation was waived by the compensation carrier, and the parties made clear that it was a settlement "based upon our defense that the injury to Mr. Bugg and his resulting death did not arise out of and in the course of the employment." It was in that context that the Court stated (189 N.W.2d at 298):

> "We hold that *in light of the agreement of the parties to the compensation case that the disputed conditions of liability under the act would be reserved for determination in this law action,* these defendants are estopped to raise the claim of release. . . . We regard the payment by the employer pursuant to the redemption agreement *under the circumstances of this case* as tantamount to a voluntary payment . . . and hold that it may not be pleaded in bar in the instant law suit." (Emphasis supplied.)

*Johnson v. Dave's Auto Center, Inc.* appears to be a case of somewhat strained reasoning applied to avert an unjust result. A claim had been made under the Workmen's Compensation Act, which the employer defended on the ground that the claimant was not its employee at the time of the accident. Eventually, a compromise agreement was reached in which, without admitting employment, the employer paid the employee's outstanding medical bills and nothing more. The Court viewed this compromise as settling only the claim for medical bills, not the claim for disability payments, a situation due primarily to the employer's denial of the requisite employment status. Yet, in the subsequent action at law, the employer asserted both that the plaintiff was an employee and that the workmen's compensation remedy was exclusive. Concluding that the inconsistency of

the employer's position was at least as great as that of the plaintiff, the court, in effect, held that the employer was estopped from raising the defense of estoppel against the plaintiff, stating, at 476 P. 2d 197, *"Under these facts and circumstances,* and for these reasons, we hold that the compromise settlement ... does not bar plaintiff from proceeding with this action against defendants, either as a matter of election of remedies, estoppel or res judicata." (Emphasis supplied.)

Finally, in *Rich v. Dyna Technology, Inc.,* the agreement in the workmen's compensation case stipulated that the claimant did not receive a compensable injury during and in the course of his employment, and that his injuries "were in no way work connected." It was stipulated that if the matter went to hearing, the claimant had grave doubts as to whether he could recover. On that basis, in return for payment of his medical expenses, the claimant agreed to dismiss the workmen's compensation claim. This agreement, the court concluded, did not serve to preclude an action to recover benefits under the employer's group health and accident policy. No tort action against the employer was involved.

In both *Bugg* and *Johnson,* the employer had taken entirely inconsistent positions, claiming in the compensation case that the claimant was not an employee and claiming in the action at law not only that he was but that the compromise in the compensation case, no doubt induced by the denial of employment, was exclusive. In both cases, the question of whether the claimant was an employee was clearly reserved for resolution in the law action. This case is different. The record does not disclose that the compensation carrier ever denied that Keahey was an employee; and neither the agreement nor the order approving it gives any clear indication that that issue was to be reserved. Indeed, the trial memorandum submitted on behalf of Ms. Keahey in the compensation case suggests that the employer argue "exclusivity" in the pending Maryland action.

In these circumstances, appellant's argument cannot stand under the plain and unambiguous provisions of § 21 (c) (4). The Compromise Agreement at issue here has validity only

to the extent that it is authorized by and comports with the requirements of the California workmen's compensation law.[5] Thus, benefits paid under such an agreement, approved by the Appeals Board, are "benefits under the workmen's compensation . . . laws of such other state" and, under § 21 (c) (4) are therefore "the exclusive remedy against such employer for any injury . . . received by such employee while working for such employer in this State."

In general comformance with this view is *Kelly v. Eclipse Motor Line,* 305 F. Supp. 191 (D. Md., 1969), *aff'd* 432 F. 2d 1009 (4th Cir., 1970). The plaintiff there, a Pennsylvania resident injured in Maryland, sought workmen's compensation benefits under the Pennsylvania law. In accordance with that law, he entered into a compromise agreement with his "employer" (Eclipse) and received the benefits thereunder. In disposing, on summary judgment, of his subsequent action at law against Eclipse, the District Court stated (305 F. Supp. at 201):

> "Kelly seeks herein to establish *de novo* that he was an independent contractor and not an employee. However, a plaintiff such as Kelly is not permitted to run a horse and wagon through the provisions of the Pennsylvania law and to upset an agreement thereunder by raising *de novo* in a tort proceeding the question of whether he was an employee or an independent contractor, and by contending in a tort case that he entered into the compensation agreement because of a mistaken assumption on his part that he was an employee."

A "wrinkle" in that case was the fact that, unlike California, Pennsylvania did not extend extra-territorial reciprocity to Maryland employers and employees, thus

---

5. Labor Code, § 5000 authorizes the parties to compromise liability "subject to the provisions herein contained". Among those provisions are: (1) § 5001 providing that no "release of liability or compromise agreement is valid unless it is approved by the appeals board or referee"; (2) § 5002 requiring that a copy of the agreement, signed by both parties, must be filed with the appeals board; and (3) § 5003 setting forth the required form and contents of such agreements.

precluding the automatic application of § 21 (c) (4).[6] Nevertheless, the court assumed that the Maryland court would apply the Pennsylvania exclusivity of remedy provision in any event; and upon that premise, it granted summary judgment against the plaintiff. Given the fact that California does extend reciprocity, we need not engage in assumptions; § 21 (c) (4) is clearly applicable and requires the result we reach.

No claim is made by Ms. Keahey that the California agreement is invalid. Therefore, notwithstanding the somewhat ambiguous language concerning the pending lawsuit in Maryland in the part dealing with "Reason for Compromise", the unambiguous provisions of paragraph 11, releasing and forever discharging the employer "from all claims and causes of action" arising or developing "as a result of said injury" must be given effect in accordance with their plain language.

*Judgment affirmed; appellant to pay the costs.*

---

6. At the time, the provision was codified in § 67 (3) of article 101.